Docket No. 99890–Agenda 19–September 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
BERNINA MATA, Appellant.

Opinion filed December 15, 2005–Modified on Denial of
Rehearing January 23, 2006.

JUSTICE KILBRIDE delivered the opinion of the court:

Defendant, Bernina Mata, was convicted of first degree murder (720 ILCS 5/9–1(a)(2) (West 1998)), and sentenced to death. Defendant appealed directly to this court. 134 Ill. 2d R. 603. While her appeal was pending, the Governor commuted her death sentence to natural life imprisonment. Thereafter, on our own motion, we issued an order transferring the appeal to the appellate court. The appellate court dismissed the case as moot. We granted defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)).

In this appeal, we consider whether defendant's challenge to the statutory aggravating factor that made her eligible for the death penalty or natural life imprisonment was rendered moot by the commutation of her sentence. We hold that this issue is not moot and, therefore, remand this matter to the appellate court for consideration of the merits of defendant's claims.

I. BACKGROUND

At trial in the circuit court of Boone County, Russell Grundmeier testified that he was defendant's roommate and they had a sexual relationship. Grundmeier dropped defendant off at a tavern at approximately 7 p.m. on June 27, 1998. Grundmeier went back to their apartment for a short time. When he returned to the tavern, Grundmeier observed defendant at the bar with a man identified as John Draheim. During the course of the evening, defendant flirted with Draheim and several other people in the tavern.

At approximately 10 p.m., defendant informed Grundmeier that she was going to kill Draheim and that Grundmeier was going to help. Grundmeier stated he would not help defendant. Defendant then went back and sat next to Draheim. Grundmeier left the tavern and went to the apartment he shared with defendant.

Approximately 15 to 20 minutes later, defendant arrived at the apartment with Draheim and a man named James Clark. Clark left after 20 to 30 minutes. Defendant and Draheim sat on the couch together. Grundmeier went outside because he was upset that defendant was with Draheim. After pacing for a few minutes, Grundmeier went back inside. Upon entering the apartment, he heard sounds coming from defendant's bedroom. Grundmeier went into the bedroom and observed defendant and Draheim engaging in what appeared to be consensual sex.

Grundmeier approached and grabbed Draheim's arm in an effort to stop him from having intercourse with defendant. Grundmeier testified that he struggled with Draheim, but subdued him after a short time. Grundmeier did not know where defendant went during the struggle. After Grundmeier subdued Draheim, defendant approached and stabbed Draheim in the chest with a knife. Grundmeier released Draheim and closed his eyes. Defendant then stabbed Draheim in the chest five or six more times.

Grundmeier testified that he ran out of the room and vomited after observing this incident. Grundmeier later helped defendant dispose of Draheim's body by dumping it along a road. He also cleaned the bedroom, painted the walls, and removed the bed in an effort to conceal evidence of the crime. Grundmeier entered a guilty plea to concealment of a homicidal death and was sentenced to four years' imprisonment.

The record indicates that police officers spoke with Grundmeier during their investigation. After speaking with him, the officers located Draheim's body in a rural farming area in Winnebago County. Defendant was arrested and charged with one count of first degree murder. Defendant made several incriminating statements to her fellow inmates prior to her trial. According to these inmates, defendant stated Draheim made her angry by touching her. Defendant stated she intended to kill Draheim, and she invited him to her apartment. The State also introduced several statements by defendant that were recorded on audiotapes while she was in the jail. In one of those statements, defendant asserted "[i]f they really want to check it out, they will find out it is premeditated." The parties also presented evidence on defendant's background, psychiatric condition, and intoxication on the night of the offense.

The jury found defendant guilty of first degree murder. The State sought imposition of the death penalty, claiming the offense was "committed in a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme or design to take a human life by unlawful means, and the conduct of the defendant created a reasonable expectation that the death of a human being would result therefrom." 720 ILCS 5/9–1(b)(11) (West 1998). The jury determined that this aggravating factor was proven beyond a reasonable doubt. The jury further found there were no mitigating factors sufficient to preclude imposition of the death penalty. 720 ILCS 5/9–1(h) (West 1998). Accordingly, the trial court sentenced defendant to death.

Defendant appealed her conviction and sentence directly to this court. 134 Ill. 2d R. 603. After we heard oral argument and took the matter under advisement, defendant filed a petition for commutation of her death sentence with the Illinois Prisoner Review Board.

The State has submitted a copy of defendant's petition for commutation in the appendix to its brief. Although the petition is not part of the record, we may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy. *People v. Henderson*, 171 Ill. 2d 124, 134 (1996). The petition is a public document that falls within the category of readily verifiable matters. See 730 ILCS 5/3–3–2(e) (West 1998); *Henderson*, 171 Ill. 2d at 134. Accordingly, we take judicial notice of the petition.

In her petition, defendant asserted "the appropriate action to be taken on [her] case is a commutation of the death sentence," and requested commutation to "an appropriate sentence of imprisonment." Defendant asserted clemency should be granted because the criminal justice system was so broken and fundamentally flawed that it failed to ensure a just result. She went on to describe several flaws in the trial and sentencing proceedings. Among those errors, defendant claimed the evidence was not sufficient to prove the aggravating factor that made her eligible for the death penalty.

On January 10, 2003, the Governor commuted defendant's death sentence to natural life imprisonment. After defendant's sentence was commuted, this court transferred her appeal to the appellate court.

Defendant moved the appellate court for leave to withdraw all but one of her contentions. 353 Ill. App. 3d 784, 785. The appellate court granted defendant's motion. 353 Ill. App. 3d at 785. In her

remaining contention, defendant argued she was entitled to a new sentencing hearing because the State failed to prove the aggravating factor that made her eligible for the death penalty or natural life imprisonment beyond a reasonable doubt. 353 Ill. App. 3d at 785.

The appellate court held that defendant's sole contention concerned the propriety of her sentence and the Governor's executively imposed sentence was not subject to judicial review. 353 Ill. App. 3d at 786. Accordingly, defendant's appeal was dismissed as moot. 353 Ill. App. 3d at 786. In a special concurrence, two justices asserted that defendant should be estopped from seeking judicial relief because she sought and received relief from the executive branch. 353 Ill. App. 3d at 788 (McLaren, J., specially concurring, joined by Byrne, J.). We granted defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)).

## II. ANALYSIS

In this appeal, defendant notes that the jury's finding on the statutory aggravating factor exposed her to a sentence of death or natural life imprisonment. Defendant contends that the State failed to prove the aggravating factor at trial. Accordingly, the natural life sentence imposed by the Governor is not authorized by law.

The State responds that the Governor's commutation power is essentially unreviewable. The only limits on the Governor's power are that the commutation cannot increase the punishment or change the nature of the conviction. The commutation of defendant's sentence did not increase her punishment or change the nature of her conviction. Defendant's challenge to her sentence is, therefore, moot.

The Illinois Constitution provides, in pertinent part, that "[t]he Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const. 1970, art. V, §12. In *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457 (2004), this court examined the Governor's constitutional authority to commute sentences and concluded that the Governor's power in this regard is extremely broad. *People ex rel. Madigan*, 208 Ill. 2d at 473. The clemency power granted by the Illinois Constitution is not subject to control by the courts or the legislature, but can be controlled only by the Governor's conscience and sense of public duty. *People ex rel. Madigan*, 208 Ill. 2d at 473, quoting

˘4˘

*People ex rel. Smith v. Jenkins*, 325 Ill. 372, 374 (1927). We concluded that the only recognized restriction on the clemency power is that the Governor may not change a defendant's conviction of one crime into a conviction of another. *People ex rel. Madigan*, 208 Ill. 2d at 475.

As noted by the State, however, the Governor's clemency power is also restricted in that the Governor may not increase a defendant's punishment. This restriction on the Governor's power is apparent from the plain language of article V, section 12. As previously noted, this section allows the Governor to grant "reprieves, commutations and pardons." Ill. Const. 1970, art. V, §12. A "commutation" is defined as the change of a defendant's punishment to a less severe one. *People ex rel. Madigan*, 208 Ill. 2d at 474, citing *People ex rel. Smith*, 325 Ill. at 376. A commutation removes the judicially imposed sentence and replaces it with a lesser sentence imposed by the Governor. *People v. Rissley*, 206 Ill. 2d 403, 463 (2003). Thus, it is axiomatic from the plain language of this constitutional provision that the Governor cannot use the commutation power to increase a defendant's punishment.

Defendant was eligible for the death penalty based on her conviction of first degree murder and the finding of the statutory aggravating factor. 720 ILCS 5/9-1(b) (West 1998). At the time the Governor commuted defendant's sentence, the jury had found all the facts necessary to justify imposition of a death sentence. The commutation to natural life imprisonment did not increase defendant's sentence or alter the nature of her conviction. Thus, the commutation was a valid exercise of the Governor's clemency power.

Defendant, nevertheless, argues that her appeal is not moot because her constitutional right to due process of law is at issue. Defendant explains that the maximum penalty authorized for the basic elements of first degree murder is a term of 60 years' imprisonment. 730 ILCS 5/5-8-1(a)(1)(a) (West 1998). Illinois law would not allow imposition of a natural life sentence in this case without the finding of the aggravating factor. Defendant argues that the State failed to prove the aggravating factor at trial. The natural life sentence, therefore, exceeds the maximum term authorized by statute for the elements that were proven to the jury. According to defendant, this claim implicates her constitutional right to due

process of law, and the executively imposed sentence can only stand if the Governor's clemency power supercedes her constitutional right to due process.

The resolution of this issue requires an understanding of the nature of the statutory aggravating factor in light of the rules established in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002). In *Apprendi*, the defendant was convicted of possession of a firearm for an unlawful purpose. The normal sentencing range for that offense under New Jersey law was 5 to 10 years' imprisonment (N.J. Stat. Ann. §2C:43–6(a)(2) (West 1995)). An extended-term sentence could be imposed based on the trial court's finding by a preponderance of the evidence that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. §2C:44–3(e) (West Supp. 1999-2000). The extended term authorized for this offense was 10 to 20 years' imprisonment. N.J. Stat. Ann. §2C:43–7(a)(3) (West 1995).

The Supreme Court framed the issue as "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Thus, "the rule established by the Court's decision in *Apprendi* admits of a relatively simple statement: due process requires that all facts necessary to establish the statutory sentencing range within which the defendant's sentence falls must be proven to a jury beyond a reasonable doubt." *People v. Swift*, 202 Ill. 2d 378, 383 (2002) (citing *People v. Jackson*, 199 Ill. 2d 286, 296 (2002), and *People v. Ford*, 198 Ill. 2d 68, 73 (2001)).

With regard to the distinction between "elements" and "sentencing factors," the Supreme Court stated "the relevant inquiry is

one not of form, but of effect–does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365. "[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." *Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.

The Supreme Court subsequently considered the applicability of *Apprendi* in the capital sentencing context. See *Ring*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428. In *Ring*, the defendant was convicted of felony murder. Ariz. Rev. Stat. Ann. §§13–1105(A), (B) (West 2001). Under Arizona law, the penalty for this conviction was death or life imprisonment. Ariz. Rev. Stat. Ann. §13–1105(C) (West 2001). The defendant could not be sentenced to death, however, unless the court found an enumerated aggravating circumstance existed and there were "no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. Ann. §§13–703(C), (F) (West Supp. 2001).

The Supreme Court held the enumerated aggravating factors that allowed imposition of the death penalty operated as " 'the functional equivalent of an element of a greater offense.' " *Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 577, 122 S. Ct. at 2443, quoting *Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19. Therefore, the sixth amendment required those factors to be proven to a jury. *Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 577, 122 S. Ct. at 2443.

The rules established in *Apprendi* and *Ring* apply directly to the statutory aggravating factor at issue in this case. Here, defendant was convicted of first degree murder. 720 ILCS 5/9–1(a)(2) (West 1998). The only authorized sentencing range for the elements of this offense is a term of 20 to 60 years' imprisonment. 730 ILCS 5/5–8–1(a)(1)(a) (West 1998); *Swift*, 202 Ill. 2d at 388. The State sought imposition of the death penalty based on a statutory aggravating factor. 720 ILCS 5/9–1(b)(11) (West 1998). The jury's finding of this aggravating factor increased the maximum penalty for this offense to death. 720

ILCS 5/9-1(g) (West 1998). Under *Apprendi* and *Ring*, the aggravating factor is the functional equivalent of an element of a greater offense. Defendant's challenge to the sufficiency of proof on the aggravating factor, therefore, clearly implicates her constitutional right to due process of law.

The State has filed a petition for rehearing, asserting our decision rests on the faulty premise that the statutory aggravating factor is an element of the offense. Relying on *Schriro v. Summerlin*, 542 U.S. 348, 159 L. Ed. 2d 442, 124 S. Ct. 2519 (2004), the State argues "neither *Ring* nor *Apprendi* converted the statutory aggravating factor found by defendant's jury into an element of the crime (first degree murder)."

The issue in *Schriro* was whether *Ring* applies retroactively to cases already final on direct review. *Schriro*, 542 U.S. at 349, 159 L. Ed. 2d at 447, 124 S. Ct. at 2521. *Schriro* does not discuss *Apprendi* in its resolution of this issue. In discussing *Ring*, the Court stated "*Ring* held that, because Arizona's statutory aggravators restricted (as a matter of state law) the class of death-eligible defendants, those aggravators *effectively were* elements for federal constitutional purposes, and so were subject to the procedural requirements the Constitution attaches to trial of elements." *Schriro*, 542 U.S. at 354, 159 L. Ed. 2d at 450, 124 S. Ct. at 2524. Thus, contrary to the State's argument, *Schriro* reaffirms our conclusion that the statutory aggravating factor here is the functional equivalent of an element of the offense for procedural due process purposes.

Defendant argues her constitutional right to due process of law is not subordinate to the Governor's power to grant executive clemency. We agree.

The supremacy clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States *** shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, a state law is without effect if it conflicts with a federal law. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 334 (1996). State courts have an obligation to enforce and protect every right granted by the Constitution of the United States whenever those rights are involved in a suit or proceeding before them. *People v. Lawton*, 212 Ill. 2d 285, 300 (2004), quoting *Robb v. Connolly*, 111

U.S. 624, 637, 28 L. Ed. 542, 546, 4 S. Ct. 544, 551 (1884). Therefore, in the event of a conflict between the Governor's clemency power granted by the Illinois Constitution and a defendant's right guaranteed by the due process clause of the fourteenth amendment, the constitutional right to due process of law must prevail.

We note that this court has considered the effect of the Governor's commutation on a defendant's right to appeal in a number of recent cases. See *People v. Williams*, 209 Ill. 2d 227 (2004); *People v. Evans*, 209 Ill. 2d 194 (2004); *People v. Shum*, 207 Ill. 2d 47 (2003); *People v. Moore*, 207 Ill. 2d 68 (2003); *People v. Graham*, 206 Ill. 2d 465 (2003); *People v. Rissley*, 206 Ill. 2d 403 (2003); *People v. Brown*, 204 Ill. 2d 422 (2002); *People v. Ceja*, 204 Ill. 2d 332 (2003); *People v. Miller*, 203 Ill. 2d 433 (2002); *People v. Lucas*, 203 Ill. 2d 410 (2002). The specific contention raised by defendant in this appeal was not addressed in those cases. The State conceded in oral argument that this is a matter of first impression in this court.

In the previous cases, however, this court explained that commutation removes the judicially imposed sentence and replaces it with a lesser, executively imposed sentence. *Williams*, 209 Ill. 2d at 232; *Evans*, 209 Ill. 2d at 208; *Shum*, 207 Ill. 2d at 51; *Moore*, 207 Ill. 2d at 70; *Graham*, 206 Ill. 2d at 470; *Rissley*, 206 Ill. 2d at 463; *Brown*, 204 Ill. 2d at 426; *Ceja*, 204 Ill. 2d at 335; *Miller*, 203 Ill. 2d at 438; *Lucas*, 203 Ill. 2d at 419. The commutations, therefore, prevented this court from being able to render effectual relief on the sentencing challenges raised by the defendants. *Williams*, 209 Ill. 2d at 232; *Evans*, 209 Ill. 2d at 208; *Shum*, 207 Ill. 2d at 51; *Moore*, 207 Ill. 2d at 70; *Graham*, 206 Ill. 2d at 470; *Rissley*, 206 Ill. 2d at 463; *Brown*, 204 Ill. 2d at 425; *Ceja*, 204 Ill. 2d at 335; *Miller*, 203 Ill. 2d at 438; *Lucas*, 203 Ill. 2d at 418. We broadly stated that "sentencing issues" or "sentencing-phase issues" are rendered moot by the Governor's commutation. *Williams*, 209 Ill. 2d at 232; *Evans*, 209 Ill. 2d at 208; *Shum*, 207 Ill. 2d at 51; *Moore*, 207 Ill. 2d at 70; *Graham*, 206 Ill. 2d at 470; *Rissley*, 206 Ill. 2d at 463; *Brown*, 204 Ill. 2d at 426; *Ceja*, 204 Ill. 2d at 336; *Miller*, 203 Ill. 2d at 438. In each case where nonsentencing issues were raised, however, we went on to decide those issues. See *Williams*, 209 Ill. 2d 227; *Evans*, 209 Ill. 2d 194; *Shum*, 207 Ill. 2d 47; *Moore*, 207 Ill. 2d 68; *Graham*, 206 Ill. 2d 465; *Rissley*, 206 Ill. 2d 403; *Ceja*, 204 Ill. 2d 332; *Miller*, 203 Ill. 2d 433; *Lucas*, 203 Ill. 2d 410.

˘9˘

The nonsentencing issues addressed in those cases include a variety of claims. For instance, in *Williams*, we addressed the defendant's claims of juror misconduct and ineffective assistance of appellate counsel. *Williams*, 209 Ill. 2d at 234-48. In *Evans*, this court considered the defendant's challenges to the sufficiency of the evidence to prove him guilty, the denial of his motion for substitution of judge, claims of ineffective assistance of counsel, and a claim that he was denied a fair trial by the prosecutor's remarks during rebuttal argument. *Evans*, 209 Ill. 2d at 208-26. Other issues we have addressed include the admissibility of evidence and denial of jury instructions on a lesser-included offense. *Ceja*, 204 Ill. 2d at 346-62. Thus, the Governor's commutation does not render all challenges by a defendant moot. Rather, only issues challenging the sentence are moot.

Our decision in this case is consistent with our previous cases. Following *Apprendi* and *Ring*, it is apparent that defendant's challenge is not to a sentencing issue. Rather, it is a challenge to the sufficiency of proof on the functional equivalent of an element of the offense. This challenge implicates defendant's due process rights guaranteed by the fourteenth amendment to the United States Constitution. The Governor's action cannot bar defendant's right to seek an effective, complete remedy on this claim. Defendant is entitled to seek judicial relief on her challenge to the aggravating factor. Thus, her claim is not moot.

The State has relied heavily on *People v. Watson*, 347 Ill. App. 3d 181 (2004), in arguing defendant's claim is moot. *Watson* is factually similar to this case. In *Watson*, the appellate court dismissed the defendant's appeal as moot holding, in relevant part, that the defendant's federal due process rights were not implicated in his appeal. *Watson*, 347 Ill. App. 3d at 190-92. We note, however, that *Watson* did not address the impact of *Apprendi* and *Ring* on the defendant's due process claim. *Watson*, 347 Ill. App. 3d at 190-92. Moreover, in this case, the State did not respond in its brief to defendant's argument based on *Apprendi* and *Ring*. *Watson* is inconsistent with our holding that defendant's due process rights are at issue in this appeal. Accordingly, we hereby overrule *Watson* to the extent that it is inconsistent with our decision.

˘10˘

The State also argues defendant is estopped from challenging the commuted sentence because she sought the commutation and it is an appropriate sentence of imprisonment. According to the State, if any deprivation of defendant's due process rights occurred, it resulted only by operation of the process she invoked to invalidate her death sentence. In its brief argument on this point, the State cites *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453 (2003). In that case, the court held the doctrine of judicial estoppel provides that " 'a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding.' " *Barack*, 342 Ill. App. 3d at 460, quoting *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996).

Defendant has not taken contrary positions in her petition for commutation and her appeal. In her petition, defendant requested an "appropriate sentence" based on a variety of factors, including that the evidence was not sufficient to prove the aggravating factor. Defendant did not request a sentence of natural life imprisonment. In her appeal, defendant also challenges the sufficiency of the evidence to prove the aggravating factor. Based on this challenge, defendant seeks a sentence for the basic elements of first degree murder in the statutory range of 20 to 60 years' imprisonment. See 730 ILCS 5/5−8−1(a)(1)(a) (West 1998); *Swift*, 202 Ill. 2d at 388. These claims are not inconsistent.

Moreover, in framing this argument, the State has mischaracterized defendant's claim on appeal. The State asserts that defendant is estopped from challenging her commuted sentence. However, as previously noted, defendant is not challenging the Governor's commutation of her sentence. Rather, she is contesting the sufficiency of proof on the functional equivalent of an element of the offense. A challenge to a sentence and a challenge to a conviction are two separate and distinct matters. We recognized this distinction in the cases where we found sentencing issues are rendered moot by the Governor's commutation, but addressed issues challenging the underlying conviction. See *Williams*, 209 Ill. 2d 227; *Evans*, 209 Ill. 2d 194; *Shum*, 207 Ill. 2d 47; *Moore*, 207 Ill. 2d 68; *Graham*, 206 Ill. 2d 465; *Rissley*, 206 Ill. 2d 403; *Ceja*, 204 Ill. 2d at 332; *Miller*, 203 Ill. 2d 433; *Lucas*, 203 Ill. 2d 410.

˘11˘

Defendant did not take inconsistent positions by seeking a commutation of her sentence from the Governor and challenging an element of the offense in her appeal. As the defendants in the cases cited above, defendant here is entitled to seek judicial relief on her challenge to the underlying conviction. We conclude defendant is not estopped from asserting this challenge simply because she sought and received a commutation of her sentence.

## III. CONCLUSION

For the foregoing reasons, we reverse the appellate court's dismissal of defendant's appeal as moot. We remand the cause to the appellate court for consideration of the merits of defendant's contentions.

*Appellate court judgment reversed;*
*cause remanded.*

JUSTICE GARMAN, dissenting:

The crux of the majority's decision is that *Apprendi* and *Ring* have altered the analysis used by courts of this state for decades regarding sentences imposed by the use of the Governor's clemency power. The majority has now decided that defendants indeed can challenge an executively imposed sentence merely by claiming that the aggravating factor used to determine eligibility for a death sentence was not proved beyond a reasonable doubt. Thus, courts of review now have power to judicially review an executively imposed sentence. Our precedents do not permit such a result. It has long been held that the Governor's power of clemency replaces the judicially imposed sentence with a lesser, executively imposed sentence. See *People ex rel. Johnson v. Murphy*, 257 Ill. 564, 566 (1913). This court has recently affirmed the fact that the Governor's clemency power is "extremely broad" and not subject to the control of the courts or the legislature. See *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 473 (2004). Prior to the issuance of today's decision, the only limit this court had recognized on the executive power of clemency was that the Governor could not increase a defendant's

punishment or change the nature of a conviction. See *People ex rel. Madigan*, 208 Ill. 2d at 475.

*Apprendi* held that any fact, other than a prior conviction, that increases the penalty for an offense beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. *Ring* held that the determination of the existence of any aggravating factor or factors that make a defendant eligible for the death penalty must be made by a jury and not by a judge. *Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 577, 122 S. Ct. at 2443. Defendant's sentencing hearing complied with these mandates in all respects. Evidence regarding the aggravating factor was presented to the jury and its existence was found by the jury beyond a reasonable doubt. The majority concludes that defendant is entitled to review of that finding because the aggravating factor is the functional equivalent of an element of a greater offense, thereby implicating defendant's due process rights. Slip op. at 8. The majority further concludes that defendant's due process rights trump the Governor's power of clemency and that defendant's appeal is therefore not moot. Slip op. at 8. Accordingly, defendant may pursue her challenge to the finding on the aggravating factor. If she is successful, she will presumably be resentenced to a term of imprisonment not to exceed 60 years, the maximum nonextended term applicable to first degree murder.

Following former Governor Ryan's commutation of death sentences in 2003, this court entertained requests for review from several defendants. See, *e.g.*, *People v. Williams*, 209 Ill. 2d 227 (2004); *People v. Evans*, 209 Ill. 2d 194 (2004); *People v. Moore*, 207 Ill. 2d 68 (2003); *People v. Shum*, 207 Ill. 2d 47 (2003); *People v. Graham*, 206 Ill. 2d 465 (2003); *People v. Rissley*, 206 Ill. 2d 403 (2003); *People v. Brown*, 204 Ill. 2d 422 (2002); *People v. Ceja*, 204 Ill. 2d 332 (2003); *People v. Miller*, 203 Ill. 2d 433 (2002); *People v. Lucas*, 203 Ill. 2d 410 (2002). In each case, the defendants challenged some aspect of their sentencing. In some of the cases, this court did not identify the sentencing issues raised, merely noting that the commutation of the defendant's sentence rendered the sentencing issues moot. See, *e.g.*, *Williams*, 209 Ill. 2d at 232; *Evans*, 209 Ill. 2d at 208; *Moore*, 207 Ill. 2d at 70; *Graham*, 206 Ill. 2d at 470; *Rissley*, 206 Ill. 2d at 463; *Ceja*, 204 Ill. 2d at 362-63. In other cases, the

opinions identify the sentencing issues. For instance, in *Shum*, the defendant argued that his trial counsel was ineffective at his capital sentencing hearing. This court handled that issue as follows:

> "In this appeal, defendant raises two issues challenging his sentence, including ineffective assistance of counsel at sentencing and improper denial of request to depose trial counsel about the sentencing hearing. Subsequent to the filing of his appeal, the Governor commuted his death sentence to natural life imprisonment without the possibility of parole or mandatory supervised release. Commutation removes the judicially imposed sentence and replaces it with a lesser, executively imposed sentence. [Citations.] Thus, the commutation rendered these sentencing issues moot. [Citations.]" *Shum*, 207 Ill. 2d at 51.

In *Miller*, the defendant argued that he received the ineffective assistance of counsel at the aggravation-mitigation phase of his capital sentencing hearing because counsel had failed to investigate and present available mitigating evidence. In an opinion filed subsequent to the commutation of the defendant's death sentence, this court found the ineffective-assistance issue moot, noting that the commutation removed the defendant's judicially imposed sentence and replaced it with a lesser, executively imposed sentence. *Miller*, 203 Ill. 2d at 437-38. The defendant in *Lucas* made a similar argument. This court found the issue was rendered moot by the commutation of the defendant's death sentence. *Lucas*, 203 Ill. 2d at 418-19.

The majority concludes that a defendant's due process rights trump the Governor's clemency power because the supremacy clause of the United States Constitution mandates that precedence be given to that constitution and federal laws. Thus, where a conflict exists between the Governor's clemency power and a defendant's due process rights under the fourteenth amendment, the due process right must prevail. Slip op. at 8. Apparently, however, this only applies to *Apprendi* issues. It is unclear why constitutional rights implicating *Apprendi* take precedence over the executive clemency power, yet constitutional rights such as the right to the effective assistance of counsel in *Miller* and *Lucas* do not. Granted, *Apprendi* issues have been referred to by the United States Supreme Court as the

"functional equivalent of an element of a greater offense." See *Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19; *Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 577, 122 S. Ct. at 2443. However, a defendant's eligibility for an enhanced sentence may be at stake in both situations. Defendants have a due process right to the effective assistance of counsel under the United States Constitution (U.S. Const., amends. VI, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, §8). Yet, as noted above, this court has not hesitated to find such issues moot following commutation of those defendants' death sentences. The apparent distinction drawn by the majority between *Apprendi* issues and other issues that also implicate constitutional rights is puzzling. In situations where a single murder was committed, a clemency defendant who alleges ineffective assistance of counsel at the sentencing stage may, if successful on that issue, become eligible to receive a lesser sentence than natural life in prison if the factors set forth in section 5–8–1(a)(1)(c) of the Unified Code of Corrections (730 ILCS 5/5–8–1(a)(1)(c) (West 2002)) are not present. In that sense, such a defendant is in no different position than the defendant in this case. Yet, under the majority opinion, the instant defendant can challenge her commuted sentence while the defendant who asserts due process rights in a different manner may not.

The majority maintains that defendant has not taken inconsistent positions by asking for executive clemency and then challenging the resulting sentence. According to the majority, defendant is not challenging the commutation of her sentence; rather, she is challenging the sufficiency of proof on the functional equivalent of an element of a greater offense. Slip op. at 11. Reduced to its essence, however, defendant's challenge *is* to her sentence. She does not dispute the sufficiency of the evidence that resulted in her murder conviction. The sole purpose of her present challenge is to obtain a reduced sentence. There can be no other reason. Defendant has obtained what amounts to double relief. Her request for the commutation of her death sentence was granted by the former Governor. In addition, she will now be able to challenge her commuted sentence by arguing that she is not eligible for natural life imprisonment because the aggravating factor was not proved beyond a reasonable doubt. If she loses on that argument, she faces, not death, but natural life imprisonment. Clemency defendants who have

˘15˘

other constitutional rights to assert, even if they implicate due process and may impact the defendant's eligibility for the commuted sentence, are not so fortunate.

I disagree with the majority's overruling of *People v. Watson*, 347 Ill. App. 3d 181 (2004). The *Watson* court applied well-established precedents in concluding that the defendant's appeal was moot. Although the court did not mention *Apprendi*, the issue raised in that case was identical to the issue raised in this case. *Apprendi* was clearly implicated when the defendant argued that the due process clauses of the United States and Illinois constitutions guaranteed him the right to have his claim considered by the court. *Watson*, 347 Ill. App. 3d at 190.

Defendant's sentencing hearing complied with the dictates of *Apprendi* and *Ring*. She does not challenge her conviction. She asked for and received a commuted sentence. The majority acknowledges that former Governor Ryan validly exercised his clemency power in this case. Like the *Watson* court, I would hold that the instant defendant's appeal is moot.