2019 IL App (3d) 160759

Opinion filed August 30, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Hancock County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-16-0759 |
| v. | ) ) | Circuit No. 96-CF-46 |
| DANIEL RAMSEY, | ) ) ) | The Honorable Rodney G. Clark, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1        The defendant, Daniel Ramsey, was convicted of numerous criminal offenses for which

he received the death penalty. While a postconviction petition was pending, his death sentence

was commuted to life imprisonment without the possibility of parole. Ramsey amended his

postconviction petition, alleging that Governor Pat Quinn violated his constitutional rights by

failing to consider his young age and other mitigating factors. The circuit court granted the

State's second-stage motion to dismiss the postconviction petition, ruling, *inter alia*, that an

executive commutation could not be judicially reviewed. On appeal, Ramsey argues that the court erred when it dismissed his postconviction petition at the second stage. We affirm.

¶ 2                                                    I. BACKGROUND

¶ 3          The facts of this case have been set out by our supreme court in *People v. Ramsey*, 239 Ill. 2d 342 (2010). We repeat only those facts necessary for the disposition of this appeal.

¶ 4          Ramsey was convicted by a jury of two counts of first degree murder (720 ILCS 5/9-1(a) (West 1996)), three counts of attempted murder (*id.* §§ 8-4(a), 9-1(a)), one count of aggravated criminal sexual assault (*id.* § 12-14(a)), one count of home invasion (*id.* § 12-11(1)), and one count of residential burglary (*id.* § 19-3(a)). He was 18 years old at the time he committed his crimes. He received the death penalty in addition to several prison terms.

¶ 5          On appeal to the supreme court, his convictions were reversed, and the case was remanded for a new trial. *People v. Ramsey*, 192 Ill. 2d 154 (2000).

¶ 6          On remand, Ramsey pled guilty to the intentional and felony murders of two individuals, the attempted murder of three individuals, aggravated criminal sexual assault, and home invasion. At sentencing, he once again received the death penalty in addition to several prison terms. On appeal to the supreme court, his convictions and sentences were affirmed. *Ramsey*, 239 Ill. 2d 342.

¶ 7          In February 2011, Ramsey filed a *pro se* postconviction petition. While that motion was pending, in March 2011, the death penalty was abolished in Illinois. Subsequently, Governor Pat Quinn commuted Ramsey's death sentence to natural life in prison without the possibility of parole.

¶ 8          Ramsey amended his postconviction petition and argued, *inter alia*, that the commutation of his sentence violated his constitutional rights under the eighth amendment of the United States

Constitution and the proportionate penalties clause of the Illinois Constitution in that the new sentence failed to consider his young age and other mitigating factors.

¶ 9 Ramsey's petition was advanced to the second stage of postconviction proceedings, in which the State filed a motion to dismiss. The circuit court granted the State's motion, ruling, *inter alia*, that Governor Quinn's commutation order was not subject to judicial review.

¶ 10 Ramsey appealed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, Ramsey argues that the circuit court erred when it dismissed his postconviction petition at the second stage. He claims that his petition made a substantial showing of a constitutional violation because his commuted sentence did not consider his young age and other mitigating factors, as required by *Miller v. Alabama*, 567 U.S. 460 (2012), and associated Illinois cases, thereby violating his constitutional rights under the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution.

¶ 13 During the second stage of postconviction proceedings, the petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *Id.*

¶ 14 In relevant part, article V, section 12, of the Illinois Constitution provides that "[t]he Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const. 1970, art. V, § 12. The power to commute a sentence

3

is the power to remove a sentence imposed by the judiciary and replace it with a lesser sentence. *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 474 (2004). In *Snyder*, our supreme court stated:

> "The pardon power given the Governor in article V, section 12, is extremely broad. \*\*\* Even before the 'on such terms as he thinks proper' language was added to the constitution, this court had recognized that the Governor's clemency powers granted by the constitution *'cannot be controlled by either the courts or the legislature.* His acts in the exercise of the power can be controlled only by his conscience and his sense of public duty.' " (Emphasis added.) *Id.* at 473 (quoting *People ex rel. Smith v. Jenkins*, 325 Ill. 372, 374 (1927)).

Further, our supreme court noted that the only restriction it had found on the exercise of the clemency power was that the Governor could not change the crime for which the individual had been convicted. *Id.* at 475.

¶ 15 One year after *Snyder*, our supreme court reiterated that "[t]he clemency power granted by the Illinois Constitution *is not subject to control by the courts or the legislature*, but can be controlled only by the Governor's conscience and sense of public duty." (Emphasis added.) *People v. Mata*, 217 Ill. 2d 535, 541 (2005). Ramsey relies heavily on *Mata* in this appeal.

¶ 16 In *Mata*, a jury had found the defendant guilty of first degree murder. *Id.* at 539. The State sought the imposition of the death penalty, arguing that a particular aggravating factor was present, and the jury found that the State met its burden of proving that factor beyond a

4

reasonable doubt. *Id.* The circuit court then imposed the death penalty. *Id.* Mata appealed her conviction and sentence to the supreme court. *Id.*

¶ 17    While the resolution of her appeal was pending, Mata filed a petition for commutation of her death sentence, arguing, *inter alia*, that the evidence was insufficient to prove beyond a reasonable doubt that the aggravating factor was present and, therefore, she was not eligible for the death penalty. *Id.* at 540. Mata's commutation petition was granted by the Governor in 2003, who imposed a natural life sentence. *Id.* Mata's appeal was then transferred to the appellate court, where Mata argued that she was entitled to a new sentencing hearing based on the aforementioned aggravating-factor issue. *Id.* The appellate court dismissed Mata's appeal as moot after ruling that she was challenging an executively imposed sentence, which was not subject to appellate review. *Id.*

¶ 18    However, on appeal, the supreme court ruled that Mata's argument—which implicated her constitutional right to the due process of law—was not moot. *Id.* at 545-48. The court held that while challenges to an executively imposed sentence are moot, nonsentencing issues are not. *Id.* at 548. Because Mata's challenge was "to the sufficiency of proof on the functional equivalent of an element of the offense" and therefore implicated her due process right guaranteed by the fourteenth amendment, the executive commutation could not preclude her from seeking the relief she requested. *Id.*

¶ 19    Ramsey does not raise the same type of nonsentencing claim that was raised in *Mata*. However, classifying Ramsey's claim simply as a sentencing issue that is unreviewable would potentially inflict a great injustice upon him individually and upon constitutional rights more broadly.

5

¶ 20    A significant aspect of the analysis in *Mata* was that our supreme court acknowledged an individual's due process rights are not subordinate to the Governor's clemency power: "[I]n the event of a conflict between the Governor's clemency power granted by the Illinois Constitution and a defendant's right guaranteed by the due process clause of the fourteenth amendment, the constitutional right to due process of law must prevail." *Id.* at 546-47. We believe it follows that the judiciary is not absolutely foreclosed from reviewing whether an executively imposed sentence is unconstitutional. As the United States District Court for the Northern District of Florida has recently explained:

> "*executive clemency is not immune from judicial review if it violates the Constitution*. More than a century ago, the Supreme Court invalidated a pardon that President Wilson issued. *Burdick v. United States*, [236 U.S. 79, 95 (1915)]. The Court observed that while the Constitution provides the President a broad pardon power, individuals also have rights under the Fifth Amendment that cannot be violated. [*Id.* at 93-94]. A court's role should be 'to preserve both [constitutional provisions],—to leave to each its proper place.' *Id.* More recently, Chief Justice Burger echoed this reasoning, writing that *executive officials may impose conditions on clemency decisions so long as 'any condition ... does not otherwise offend the Constitution.' Schick v. Reed*, [419 U.S. 256, 266 (1974)]. By extension, the clemency decision itself—the object of any condition—must abide by the Constitution.
>
> ***

6

*** No serious person would argue that an act of executive clemency that, for example, is motivated by race cannot run afoul of the Constitution simply because it is an act of executive clemency." (Emphases added.) *Hand v. Scott*, 285 F. Supp. 3d 1289, 1303-04 (N.D. Fla. 2018).

¶ 21    Likewise, in this case, we see no justice in a rule mandating a reviewing court to look the other way in a situation in which the Governor may have imposed an unconstitutional sentence. It is not the fact that *Miller* is a court case, or even that it is a United States Supreme Court case, that drives the issue here. It is that *Miller* has construed the imposition of a mandatory life sentence without the possibility of parole as a violation of the eighth and fourteenth amendments, and therefore unconstitutional, when it is imposed on a minor without considering the impact of his or her youth and other associated mitigating factors. *Miller*, 567 U.S. at 479. Put another way, the Governor is not being constrained by the courts or the legislature but by his oath to uphold the United States and Illinois Constitutions. Accordingly, we address whether Ramsey's due process rights were violated when Governor Quinn imposed on him a prison sentence of life without the possibility of parole.

¶ 22    Regarding his eighth amendment claim, there is nothing in Ramsey's situation to warrant an extension of *Miller*. As noted above, *Miller* clearly only applied to juveniles. *Id.* Our supreme court has made clear that the line between juveniles and adults presently remains at 18 years of age. *People v. Harris*, 2018 IL 121932, ¶¶ 58-61. Because Ramsey was 18 and had crossed that line when he committed his crimes, his eighth amendment claim fails. *Id.* ¶ 61.

¶ 23    Regarding Ramsey's proportionality claim under the Illinois Constitution (Ill. Const. 1970, art. I, § 11), we see nothing in the record to indicate that Governor Quinn's executively

7

imposed sentence shocks the moral sense of the community, despite Ramsey's protestations to the contrary. See *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (noting that one of the three forms of proportionality review is whether "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community"). To support his proportionality argument, Ramsey relies heavily upon *People v. House*, 2019 IL App (1st) 110580-B, ¶¶ 63-64, in which the First District found that a mandatory sentence of life in prison without the possibility for parole shocked the moral sense of the community for a 19-year-old defendant. The First District based its decision in part on evolving science regarding brain development, which has the effect of blurring the line drawn at 18 years of age that demarcates adulthood for legal purposes. *Id.* ¶¶ 55-56. However, the facts of *House* are markedly different from those in the instant case. Significantly, House was convicted on an accountability theory, and he was not present at the scene of the murders; rather, he acted as a lookout nearby, and no evidence was presented to indicate that he aided in the planning of the murders. *Id.* ¶ 46. In contrast, Ramsey was a solo actor who sexually assaulted and killed one minor and then broke into a residence and shot four other minors, killing one. These are not circumstances that warrant the type of leniency House received. See *id.* ¶ 65. Under these circumstances, we reject Ramsey's proportionality claim.

¶ 24    For the foregoing reasons, we hold that, although the sentence imposed by the Governor when commuting a death sentence cannot be controlled by the courts or the legislature, his exercise of clemency is not wholly unfettered. Executive commutations are constrained by fundamental rights guaranteed by the United States and Illinois Constitutions, which the Governor swore to uphold when he took his oath of office. We further hold that Ramsey's

sentence of life without parole did not violate either constitution, and we affirm the decision of the circuit court on that basis.

¶ 25                              CONCLUSION

¶ 26        The judgment of the circuit court of Hancock County is affirmed.

¶ 27        Affirmed.

**No. 3-16-0759**

| | |
|---|---|
| **Cite as:** | *People v. Ramsey*, 2019 IL App (3d) 160759 |
| **Decision Under Review:** | Appeal from the Circuit Court of Hancock County, No. 96-CF-46; the Hon. Rodney G. Clark, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Tiffany Boye Green, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Leah M. Bendik, Assistant Attorneys General, of counsel), for the People. |