# Illinois Official Reports

## Appellate Court

---

### *People v. McClurkin*, 2020 IL App (1st) 171274

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRYAN McCLURKIN, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-17-1274 |
| Filed<br>Rehearing denied | June 5, 2020<br>August 26, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 97-CR-26539; the Hon. Thomas V. Gainer Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Erin Sostock, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Bryan McClurkin, appeals from an order of the circuit court, denying him leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, defendant contends that the denial of leave to file was erroneous because he showed the requisite cause and prejudice for filing a successive petition. For the reasons stated below, we affirm.

¶ 2                                    I. JURISDICTION

¶ 3    In January 2017, defendant filed a motion for leave to file a successive postconviction petition. The circuit court denied that motion on April 14, 2017, and defendant filed his notice of appeal on May 2, 2017. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017), governing appeals from a final judgment in a postconviction proceeding.

¶ 4                                    II. BACKGROUND

¶ 5    Following a 2000 jury trial in which the jury was instructed on second degree murder and self-defense, as well as first degree murder, defendant was found guilty of the September 1997 first degree murders of shopkeeper Nabil Tayeh and his 15-year-old employee, Maher Harb. At trial, defendant had claimed self-defense against Tayeh and Harb, despite defendant being 6'8" tall while Tayeh was 5'7" tall and Harb was 5'3" tall. The jury found defendant eligible for the death penalty, including that he was at least 18 years old when he murdered two or more people.

¶ 6    A sentencing hearing was held, with considerable evidence in aggravation and mitigation. In relevant part, psychologist Dr. Lawrence Heinrich testified for the defense that defendant had a severe personality disorder, albeit no mental illness, at the time of the offenses; that is, extreme emotional distress resulting from childhood abuse impaired his judgment and impulse control. Dr. Heinrich also testified that defendant's personality disorder included "an inflated sense of self-importance, resentful [and] arrogant attitudes, socially intimidating manner," and being "self-centered and socially intolerant" as well as "aware of and inconsiderate of the feelings of others." Dr. Heinrich's opinion was based on interviews and testing in September 1999.

¶ 7    The record shows that defendant was born in December 1972 and had felony criminal convictions in 1991 and 1994, including armed violence, with prison terms of six and four years respectively. The jury chose to impose natural life imprisonment rather than the death penalty.

¶ 8    Before sentencing defendant, the trial court asked if there was any contest to the mandatory application of a life sentence, and the defense had none. Noting that a natural life sentence was mandatory and that mitigating evidence had been presented, the court gave defendant concurrent sentences of natural life imprisonment.

¶ 9    On direct appeal, we affirmed the convictions against a contention that the State misstated evidence in its rebuttal closing argument. *People v. McClurkin*, No. 1-00-3322 (2003) (unpublished order under Illinois Supreme Court Rule 23). The evidence underlying

defendant's convictions is adequately set forth in our direct appeal order, so we shall set forth only the evidence and procedural history necessary for an understanding of this appeal. In affirming the convictions, this court found in part that the evidence against defendant was not closely balanced.

¶ 10    Defendant filed a *pro se* postconviction petition in 2005, claiming in relevant part that counsel was ineffective for not calling Dr. Heinrich as a trial witness to support his self-defense argument and that his life sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court summarily dismissed the petition in March 2005, finding that defendant "was never able to establish that he acted in self defense as a result of his extreme emotional distress in either the trial or the sentencing phase" and "was sentenced following a lengthy investigation by the trial court of both mitigating and aggravating circumstances which runs contrary to the assertion that the sentence was 'automatic.' " This court affirmed that disposition against a contention that the ineffectiveness claim for not calling Dr. Heinrich at trial was at least arguably meritorious. *People v. McClurkin*, No. 1-05-1381 (2006) (unpublished order under Illinois Supreme Court Rule 23). We held that evidence of a personality disorder that causes defendant to "overreact and become enraged *** might account for the extreme nature of defendant's behavior, but would not establish that defendant believed, reasonably or unreasonably, that his actions were justified," so that defendant was not prejudiced by the failure to present this evidence at trial. *Id.* at 6.

¶ 11    In January 2017, defendant filed the *pro se* motion for leave to file a successive postconviction petition now at issue. Defendant claimed that his mandatory life sentence without possibility of parole was unconstitutionally excessive and disproportionate as applied to him because the trial court could not consider the effect on his fatal actions of his age, 24 years, at the time of the offenses, his history of abuse, and his personality disorder. Defendant pointed to Dr. Heinrich's sentencing testimony to show his "constant, vicious physical abuse" and "severe personality disorder." He argued that this court has stated—in *People v. Gipson*, 2015 IL App (1st) 122451, *People v. House*, 2015 IL App (1st) 110580, and *People v. Brown*, 2015 IL App (1st) 130048—that *Miller v. Alabama*, 567 U.S. 460 (2012), holding unconstitutional the mandatory imposition of life sentences without possibility of parole upon persons who were minors at the time of their offenses, should not be limited to defendants who were minors but should apply to young adults.

¶ 12    On April 14, 2017, the circuit court denied defendant leave to file a successive petition. The court noted that, of the cases defendant cited, only *House* actually applied *Miller* to an adult. The court distinguished *House*'s "unique factual circumstances," including a 19-year-old offender with no criminal history who was a "lookout rather than actively participating in the shooting." By contrast, defendant was "significantly older," "had an extensive criminal background," and directly perpetrated the murders. The court noted that the statutory requirement of natural life imprisonment for murdering more than one person has been upheld. The court found that there was no proportionate-penalties issue because defendant was not a juvenile or minor when he committed these offenses and thus was not similarly situated to minors who by statute are no longer subject to mandatory natural life imprisonment. Defendant timely filed this appeal.

¶ 13                                    III. ANALYSIS

¶ 14        Defendant contends that that the denial of leave to file a successive petition was erroneous because he showed the requisite cause and prejudice for filing a successive postconviction petition, raising a claim that his mandatory life sentence without possibility of parole was unconstitutional as applied to him, because the trial court could not consider the effect on his fatal actions of his age, 24 years, at the time of the offenses, his history of abuse, and his personality disorder.

¶ 15        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a mechanism by which those under criminal sentence can assert their convictions were the result of a substantial denial of their rights under the federal and State constitutions. 725 ILCS 5/122-1(a)(1) (West 2018). The Act provides that a defendant may file only one postconviction petition without leave of court, which is granted only when the defendant shows both cause for not raising a claim earlier and prejudice from not raising it earlier. "Cause" is an objective factor impeding raising the claim earlier, and "prejudice" is an error that so infected the trial proceedings that the resulting judgment violated due process. 725 ILCS 5/122-1(f) (West 2018). Because successive petitions are disfavored, the burden is on a defendant seeking to file a successive petition, including a *pro se* defendant, to show cause and prejudice. *People v. Smith*, 2014 IL 115946, ¶¶ 30-31, 34. A successive petition is held to a higher standard than the frivolous and patently without merit, or the gist of a meritorious claim, standard for summarily dismissing an initial postconviction petition. *Id.* ¶ 35.

            "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.*

We review *de novo* the denial of leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13; *People v. Handy*, 2019 IL App (1st) 170213, ¶ 27, *pet. for leave to appeal pending*, No. 125827 (filed Mar. 3, 2020).

¶ 16        In *People v. Leon Miller*, 202 Ill. 2d 328 (2002), our supreme court upheld a trial court decision to sentence a defendant who was 15 at the time of his offense(s) and tried as an adult to 50 years' imprisonment, despite the statutory requirement of natural life sentence for two or more murders. The supreme court agreed with the trial court that a natural life sentence would have been disproportionate because it would have resulted from the interaction of three statutes mandating that certain juveniles be tried as adults, basing criminal liability on accountability, and requiring natural life imprisonment for two or more murders. *Id.* at 340.

            "We agree with defendant that a mandatory sentence of natural life in prison with no possibility of parole grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community. This moral sense is particularly true, as in the case before us, where a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole—the same sentence applicable to the actual shooter. Our decision does not imply that a sentence of life imprisonment for a juvenile offender convicted under a theory of accountability is never appropriate. It is certainly possible to contemplate a situation where a juvenile offender actively participated in

- 4 -

the planning of a crime resulting in the death of two or more individuals, such that a sentence of natural life imprisonment without the possibility of parole is appropriate. However, that is not the case before this court ***." *Id.* at 341.

¶ 17   In *People v. Harris*, 2018 IL 121932, ¶¶ 1, 16, 50, a defendant sentenced to a mandatory 76 years' imprisonment for first degree murder, attempted first degree murder, and aggravated battery with a firearm committed when he was 18 years old asked our supreme court " 'to extend the bright line rule of *Miller* to young adults ages 18 to 21.' " However, the *Harris* court rejected the facial constitutional challenge and declined to extend *Miller*. While the *Harris* defendant argued "that emerging scientific research on the neurological development of young adults supports extending *Miller* to adults under the age of 21," the supreme court found that "the line drawn by the Supreme Court at age 18 was not based primarily on scientific research" but was a categorical rule based on society's use of 18 as the threshold between childhood and adulthood for various purposes. *Id.* ¶¶ 59-60. "New research findings do not necessarily alter that traditional line between adults and juveniles." *Id.* ¶ 60. The supreme court found an as-applied challenge to the sentence to be premature, noting that "the record here does not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances." *Id.* ¶ 46.

¶ 18   Since *Harris*, our supreme court has held that

> "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense *committed while a juvenile* must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." (Emphasis added.) *People v. Buffer*, 2019 IL 122327, ¶ 27.

¶ 19   Upon being directed by our supreme court to reconsider its decision in light of *Harris*, the *House* court reiterated its finding that a 19-year-old offender's life sentences for double murder were unconstitutional as applied for being disproportionate. *People v. House*, 2019 IL App (1st) 110580-B, ¶¶ 4, 27, 32, 66, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020).

> "While defendant was not a juvenile at the time of the offense, his young age of 19 is relevant under the circumstances of this case. As in *Leon Miller*, defendant's sentence involved the convergence of the accountability statute and the mandatory natural life sentence. We acknowledge that the offender in *Leon Miller* was 15, never handled a firearm, and had less than a minute to consider the implications of his participation. In the present case, the State's evidence at trial established that defendant was not present at the scene of the murder but merely acted as a lookout near the railroad tracks. There was no evidence that defendant helped to plan the commission but instead took orders from higher ranking [gang] members. While defendant had a greater involvement in the commission of the offenses than the defendant in *Leon Miller*, after considering the evidence and defendant's relevant culpability, we question the propriety of a mandatory natural life sentence for a 19-year-old defendant convicted under a theory of accountability. Although defendant acted as a lookout during the commission of the crime and was not the actual shooter, he received a mandatory natural life sentence, the same sentence applicable to the person who pulled the trigger. Defendant is serving the same mandatory sentence of natural life as Verser, a codefendant who participated in the shooting of the victims, while Weatherspoon, a codefendant with the similar

culpability as defendant has been released from the penitentiary following resentencing because Weatherspoon was 17 years old during the commission of the murders." *Id.* ¶ 46.

¶ 20   In *People v. Ramsey*, 2019 IL App (3d) 160759, ¶¶ 4, 7, 23, this court rejected a proportionate-penalties challenge to a natural life sentence by a defendant who was 18 at the time of his offenses. The *Ramsey* court noted that the *House* court

"based its decision in part on evolving science regarding brain development, which has the effect of blurring the line drawn at 18 years of age that demarcates adulthood for legal purposes. [Citation.] However, the facts of *House* are markedly different from those in the instant case. Significantly, House was convicted on an accountability theory, and he was not present at the scene of the murders; rather, he acted as a lookout nearby, and no evidence was presented to indicate that he aided in the planning of the murders. [Citation.] In contrast, Ramsey was a solo actor who sexually assaulted and killed one minor and then broke into a residence and shot four other minors, killing one. These are not circumstances that warrant the type of leniency House received." *Id.* ¶ 23 (citing *House*, 2019 IL App (1st) 110580-B, ¶ 65).

See also *Handy*, 2019 IL App (1st) 170213, ¶¶ 1, 38, 40, 42 (rejecting an 18-year-old offender's as-applied proportionate penalties challenge to his 60-year prison sentence and affirming the denial of leave to file a successive petition, at least in part because the *House* defendant was a mere lookout while the *Handy* defendant active participated in his offenses).

¶ 21   Here, defendant has an actual sentence of natural life imprisonment rather than a *de facto* life sentence (see *Buffer*, 2019 IL 122327, ¶ 40 (a prison sentence of more than 40 years is a *de facto* life sentence)) and that sentence was mandatory in the sense that, as in *House*, the trial court had no discretion to impose a shorter sentence. *House*, 2019 IL App (1st) 110580-B, ¶ 64. On the other hand, defendant was a 24-year-old adult—no longer a teenager as in *House*—when he committed the murders of Harb and Tayeh. Moreover, defendant personally killed Harb and Tayeh, rather than being found guilty based on accountability as in *Leon Miller* or *House*. In sum, we cannot say about defendant what this court said about *House* in granting relief:

"[W]hile clearly no longer a juvenile, defendant, at age 19 years and 2 months, was barely a legal adult and still a teenager when he committed these offenses. His youthfulness is relevant when considered alongside his participation in the actual shootings. Defendant's presentence investigation report showed that his only prior offenses were possession of a controlled substance with intent to deliver. Defendant did not have a criminal history of committing violent crimes." *Id.* ¶ 63.

¶ 22   Lastly, we note that defendant is not arguing that his sentence is disproportionate due solely to his age at the time of the offense but also due to his diagnosed personality disorder. Detailed evidence of that diagnosis is in the trial court record in the form of Dr. Heinrich's sentencing testimony and related exhibits. Thus, we find that the circuit court had, and we have, an ample record upon which to evaluate defendant's as-applied challenge to his sentence for the requisite cause and prejudice. It is axiomatic that personality or behavioral disorders may be aggravating as well as mitigating factors in sentencing. *People v. Baez*, 241 Ill. 2d 44, 122-23 (2011); *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 44. Moreover, in one of the cases that led to *Miller*, the United States Supreme Court noted the difference

"between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. [Citation.] As we understand it, this difficulty underlies the rule forbidding psychiatrists from diagnosing any patient under 18 as having antisocial personality disorder, a disorder also referred to as psychopathy or sociopathy, and which is characterized by callousness, cynicism, and contempt for the feelings, rights, and suffering of others." *Roper v. Simmons*, 543 U.S. 551, 573 (2005).

The fact that Dr. Heinrich diagnosed defendant with a personality disorder—including being "self-centered and socially intolerant" as well as "aware of and inconsiderate of the feelings of others" (albeit not antisocial personality disorder particularly)—when he was nearly 27 years old, and attributed his actions two years earlier to that disorder, militates against attributing his fatal actions in this case to transient immaturity.

¶ 23    Despite defendant's argument that the law interpreting and applying *Miller v. Alabama* is evolving across the nation, we conclude that the law is sufficiently resolved in Illinois for the circuit court and this court to assess defendant's motion to file a successive postconviction petition and conclude that he has not shown the requisite prejudice for filing a successive petition.

¶ 24                                    IV. CONCLUSION

¶ 25    Accordingly, we affirm the judgment of the circuit court.

¶ 26    Affirmed.