FIFTH DIVISION
September 28, 2007

No. 1-05-0563

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIE THOMPKINS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | John A. Wasilewski, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

The defendant Willie Thompkins appeals the December 8, 2004, order of the circuit court of Cook County sentencing him to two concurrent natural life sentences for the murders of Gerald Holton and Arthur Sheppard. We are asked to consider whether then-Governor Ryan's commutation order which removed the sentencing consequence of capital punishment from defendant's previously imposed death sentence also removed the requirement of a mandatory natural life sentence under section 5-8-1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005-8-1(a)(1)(c)). The circuit court ruled that the commutation order did not remove the requirement of a mandatory natural life sentence and conducted a new sentencing hearing after which defendant was resentenced to two concurrent terms of natural life. Defendant challenges his sentence to natural life imprisonment which was imposed after the resentencing hearing. For the reasons that follow, we affirm.

BACKGROUND

This case has been the subject of four Illinois Supreme Court decisions. The facts leading up to defendant's arrest are detailed in *People v. Thompkins*, 191 Ill. 2d 438 (2000) (*Thompkins* IV) and are only briefly summarized in the following paragraph.

On December 23, 1980, the bodies of Gerald Holton and Arthur Sheppard were found lying outside in an unincorporated area near Markham, Illinois. Both men died from gunshot wounds to the head. The record reflects that on December 22, 1980, defendant's sister-in-law, Pamela Thompkins, arranged to purchase some cocaine from the victims. The victims brought cocaine to Pamela's home and placed it on a table in the basement, where Ronnie Moore and Sandra Douglas were seated. Defendant appeared with a gun and told the victims, "Put *** your hands on the table. This is the police." Defendant and Moore then tied the victims with a telephone cord. According to Douglas, a few hours later while she and Pamela were upstairs in the home, she heard gunshots in the basement. She then saw a body being dragged to the garage and saw Moore take Sheppard outside. Defendant later called Douglas and instructed her to clean up the bloody basement. Upon his arrest, defendant gave an oral statement to police in which he admitted his participation in the murders, but attempted to shift the blame to Moore. *Thompkins*, 191 Ill. 2d at 442 (*Thompkins* IV). Defendant was found guilty by a jury of the two murders and sentenced to death.

The procedural history up through *People v. Thompkins*, 181 Ill. 2d 1 (1998) (*Thompkins* III), is summarized in *Thompkins*, 191 Ill. 2d 438 (*Thompkins* IV) and will be repeated here only as is necessary to give context to the issues in the instant case.

1-05-0563

After defendant was sentenced to death for the murders of Holton and Sheppard he appealed. On direct appeal, to our supreme court, the defendant's convictions and death sentence were affirmed. *People v. Thompkins*, 121 Ill. 2d 401 (1988) (*Thompkins* I).

On post-conviction review, an evidentiary hearing was ordered on defendant's claim that he was denied effective assistance of counsel at his sentencing hearing because his counsel failed to adequately investigate and present mitigating evidence. *People v. Thompkins*, 161 Ill. 2d 148 (1994) (*Thompkins* II). The circuit court conducted the evidentiary hearing and concluded that defendant was not denied effective assistance of counsel at sentencing. Defendant appealed and argued that the circuit court erred during the evidentiary hearing by refusing to allow defendant to make several offers of proof, by leaving the bench during another offer of proof, and by ordering defendant's offers of proof to be stricken from the record. *Thompkins*, 181 Ill. 2d at 9 (*Thompkins* III). The Illinois Supreme Court ordered that the evidentiary hearing be reopened and retained jurisdiction over the case. *Thompkins*, 181 Ill. 2d at 23-24 (*Thompkins* III).

On remand, the circuit court held an evidentiary hearing and found there was significant and relevant mitigation evidence that had not been offered by trial counsel at the sentencing hearing in 1982. The circuit court found that this mitigation evidence could have been presented to the sentencing judge to demonstrate that defendant was " 'a good son, husband, father, friend, and worker'; that defendant 'may have helped save the life of a youth officer who later became the Chief of Police of Markham'; and that defendant 'was kind to women and protective of them.' " *Thompkins*, 191 Ill. 2d at 468 (*Thompkins* IV). The circuit court, however, concluded that defendant received effective assistance of counsel at his initial sentencing hearing.

3

1-05-0563

*Thompkins*, 191 Ill. 2d at 468 (*Thompkins* IV).

On direct appeal to the Illinois Supreme Court, defendant argued that "the facts presented at the evidentiary hearing establish[ed] that [defendant] was deprived of his constitutional right to effective assistance of counsel at his sentencing hearing" because "the evidentiary hearing showed that his counsel failed to adequately investigate and present mitigating evidence." *Thompkins*, 191 Ill. 2d at 468 (*Thompkins* IV). The Illinois Supreme Court agreed, vacated defendant's death sentence and remanded to the circuit court for a new sentencing hearing. *Thompkins*, 191 Ill. 2d at 477 (*Thompkins* IV). However, the Illinois Supreme Court affirmed the sentencing judge's finding that defendant was still eligible for the death penalty. *Thompkins*, 191 Ill. 2d at 477 (*Thompkins* IV).

On January 10, 2003, before defendant was resentenced, then-Governor George Ryan granted clemency to all Illinois inmates who had been sentenced to death and to all those awaiting possible death sentencing. The commutation order stated as follows:

> "Sentence Commuted to a Sentence Other Than Death for the
> Crime of Murder, So that the Maximum Sentence that may be
> Imposed is Natural Life Imprisonment Without the Possibility of
> Parole or Mandatory Supervised Release."

The Illinois Supreme Court affirmed the constitutionality of this order in *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457 (2004). After the Illinois Supreme Court affirmed this order, the circuit court conducted a sentencing hearing on December 8, 2004. Defendant's resentencing hearing is the subject of the instant appeal.

4

## RESENTENCING HEARING

Before defendant was resentenced he filed a motion arguing that the language of the governor's clemency order specifically superseded section 5-8-1(a)(1)(c) of the Unified Code of Corrections thereby allowing the possibility that defendant might be sentenced to a term of years rather than natural life without parole. However, defendant conceded that other portions of the statute were left intact and, therefore, the judge was still bound to sentence defendant to a term of 20 to 40 years. The judge stated that, under defendant's interpretation of the commutation order, the Governor had delegated his clemency power to the judiciary to use its discretion instead of imposing the sentence mandated by statute, and if that was the case then what the Governor did was unconstitutional. The judge, therefore, concluded that defendant's interpretation was incorrect given the holding in *Madigan*. Accordingly, the judge found that the only effect of the commutation order was to remove the possibility of a death sentence. The judge indicated he had no discretion over defendant's sentence and that he was required by law to impose a sentence of natural life without parole.

The defendant then requested a new presentence investigation contending it could be helpful as to future placement of defendant by the Department of Corrections. The judge questioned the relevance of the motion, but concluded that a presentence investigation was consistent with the court's past practice in natural life cases. The judge, however, reiterated that the only sentence available was natural life.

During defendant's resentencing hearing on December 8, 2004, the judge indicated that he had reviewed the new presentence investigation report and defendant's sentencing submission.

No witnesses were presented by either the State or the defense. In aggravation the State included a stipulation that defendant was convicted in 1970 for the attempted murder and aggravated battery of Michael Weaver. Defendant's sentencing submission included mitigation evidence previously presented at his post-conviction evidentiary hearing and clemency hearing. Both the State and defense argued in aggravation and mitigation. The defendant also spoke to the court regarding why certain mitigation evidence had been introduced. The judge noted that defendant's prison record included 31 nonviolent disciplinary infractions and 3 referrals to isolation during his first year of confinement. There were additional disciplinary infractions through the years. The judge also noted that the Illinois Supreme Court "eloquently summarized" the substantial mitigation evidence. The record reflects a substantial amount of mitigating evidence was presented during the resentencing proceeding.

After considering the aggravation and mitigation, the judge imposed a sentence of two concurrent terms of natural life imprisonment indicating that this sentence was mandated by law because defendant was convicted of double murder. The judge further noted that even if he had discretion as to the sentence, he would still sentence defendant to natural life imprisonment. Defendant's motion to reconsider sentence was denied on January 24, 2005. The judge again indicated that even if he had discretion in sentencing, he would impose a sentence of natural life imprisonment. This appeal followed.

ANALYSIS

Defendant raises the following four arguments challenging his sentence to natural life imprisonment: (1) the court erred in finding that it had no discretion in sentencing defendant; (2)

6

the court abused its discretion by failing to consider substantial mitigation evidence in violation of the eighth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution; (3) the record reflects erroneous factual findings by the court regarding aggravation evidence; and (4) the court imposed an unconstitutionally disparate sentence in violation of article I, section 11, of the Illinois Constitution and the eighth and fourteenth amendments to the United States Constitution. We address each argument in turn.

## I. CIRCUIT COURT CORRECTLY FOUND NO SENTENCING DISCRETION

Defendant contends the circuit court erred when it concluded that it had no discretion to impose a sentence other than natural life imprisonment for defendant's double homicide convictions. In support of that contention, defendant argues as follows:

> "The Commutation Order removed the 1982 finding that Mr.
> Thompkins was eligible for the death penalty, and, because it used
> permissive and discretionary language, the Order overrode Illinois
> Revised Statute 1980, chapter 38 Section 1005-8-1 (a)(1)c, which
> otherwise would have made natural life imprisonment mandatory
> for the double homicide conviction in this case."

While defendant's resentencing hearing was pending, then-Governor George H. Ryan issued a partial pardon to defendant and others facing the death penalty "by removing the maximum sentence for these defendants in future sentencing hearings." *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 476 (2004). The pardons provided as follows:

7

1-05-0563

"Sentence Commuted to a Sentence Other Than Death for the

Crime of Murder, So that the Maximum Sentence that may be

Imposed is Natural Life Imprisonment Without the Possibility of

Parole or Mandatory Supervised Release."

The Illinois Supreme Court in *Snyder* held these pardons to be valid and indicated as follows:

"[T]he Governor's constitutional authority to issue pardons after

conviction is sufficiently broad to allow him to reduce the maximum

sentence the defendant is facing.  In such a situation, the Governor

is exercising his power to prevent or mitigate punishment by

pardoning the defendant from the full extent of the punishment

allowed by law." *Snyder*, 208 Ill. 2d at 477.

We agree that, based on the language and intent of the above-quoted order, defendant could never again be a candidate for the death penalty based on his double homicide convictions. However, we disagree with defendant's contention that because the commutation order used permissive and discretionary language, the order "overrode" section 5-8-1(a)(1)(c) (Ill. Rev. Stat. 1981, ch. 38, par. 1005-8-1(a)(1)(c)), which makes natural life imprisonment mandatory for the double homicide convictions in the instant case.

The commutation order, which was the same order granted to other murder convicts awaiting new sentencing, only removed the death penalty as an available sentence. *Snyder*, 208 Ill. 2d at 476.  The commutation order provides that the "Maximum Sentence that may be Imposed is Natural Life Imprisonment Without the Possibility of Parole or Mandatory Supervised

8

Release." Defendant, relying on the word "may," argues that the sentencing judge has the discretion to impose a term of years rather than natural life.

There is no question that a governor of the State of Illinois has the authority to commute a defendant's sentence to a term of years under the statutory minimum; however, then-Governor Ryan did not do so in the instant case. See *Snyder*, 208 Ill. 2d at 475-77. Rather, then-Governor Ryan choose to remove the death penalty as a legal consequence of defendant's crimes and mitigated the defendant's sentence to the only other possible legal consequence under the law for a double homicide: natural life imprisonment. Ill. Rev. Stat. 1981, ch. 38, par. 5-8-1(a)(1)(c) ("if the defendant *** is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment").

The substance, not the terminology, of a governor's clemency order controls. *Snyder*, 208 Ill. 2d at 476-77. The substantive effect of the order entered in the instant case was to mitigate the defendant's sentence of death to a sentence of natural life imprisonment, not to commute his potential sentence to an undetermined term. See *People v. Collins*, 351 Ill. App. 3d 959, 962 (2004). Then-Governor Ryan had the authority to commute defendant's sentence to an undetermined term, but chose not to do so.

For the reasons previously discussed, we reject defendant's argument that the sentencing judge erred in finding that it had no discretion other than to sentence defendant to a term of natural life imprisonment.

II. CIRCUIT COURT PROPERLY CONSIDERED MITIGATION EVIDENCE

Defendant contends the circuit court abused its discretion by failing to consider substantial

mitigating evidence in violation of the due process clause and article I, section 2, of the Illinois Constitution. In support of that contention, defendant argues that "the Circuit Court's purported consideration of the evidence in mitigation was necessarily a fiction because the Court held that it had no option but to sentence Mr. Thompkins to a term of two concurrent natural life sentences." The State responds that it was not necessary for the trial court to hold a sentencing hearing.

In *People v. Collins*, we stated that the clemency orders which we interpreted to be more in the nature of limited pardons than sentencing commutations (*Collins*, 351 Ill. App. 3d at 961) "did not require the circuit court to hold a sentencing hearing regarding the appropriate sentences to be imposed, and the circuit court did not err in remanding the defendants to the Department of Corrections to serve natural life sentences pursuant to then-Governor Ryan's clemency orders." *Collins*, 351 Ill. App. 3d at 962; *People v. Morgan*, No. 1-05-4016, slip op. at 6 (August 20, 2007) (a capital defendant is not entitled to a new sentencing hearing after receiving a limited pardon removing the death penalty as a legal consequence of his actions). However, in the instant case, we are not called upon to determine whether a sentencing hearing should have been held. The circuit court elected to conduct a sentencing hearing. Accordingly, the issue in the instant case is whether during the sentencing hearing which was held did the judge give proper consideration to defendant's mitigation evidence.

We are mindful that once the sentencing hearing was underway, the judge in the instant case had both a statutory and constitutional duty to consider evidence in mitigation. *People v. Coleman*, 168 Ill. 2d 509, 556-57 (1995); U.S. Const., amend. VIII; 730 ILCS 5/5-5-3.1(a) (West 2006). The judge ordered a new presentence investigation report, reviewed it and allowed

10

the State and defense to make any corrections to the report. The record reflects the judge stated he reviewed the extensive mitigation evidence presented by defendant, which included mitigation evidence that defendant has been a benefit to his community, his family, his friends, has a good employment record, has been a model prisoner and is a man of faith. The record further reflects that the judge considered defense counsel's argument in mitigation.

In support of his argument that the record demonstrates the judge ignored mitigation evidence, defendant relies on *People v. Markiewicz*, 246 Ill. App. 3d 31, 55-56 (1993). We do not find *Markiewicz* persuasive.

In *Markiewicz*, the case was remanded for resentencing because the judge mistakenly believed he could only consider statutory mitigation enumerated in section 5-5-3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005-5-3.1(a)). *Markiewicz*, 246 Ill. App. 3d at 55-56. In the instant case, the judge was operating under no such misconception. Rather, the judge properly considered mitigation evidence both statutory and nonstatutory. See *People v. Scott*, 148 Ill. 2d 479, 560 (1992) (sentencing judge should consider all matters reflecting upon defendant's personality, propensities, purposes, tendencies and every aspect of his life relevant to sentencing).

After conducting the sentencing hearing, the judge correctly noted that the law required him to impose a sentence of natural life for defendant's double homicide convictions. See Ill. Rev. Stat. 1981, ch. 38, par. 1005-8-1(a)(1)(c). He also made it clear at the sentencing hearing and later in ruling on defendant's motion to reconsider sentence that, even if he had the discretion to impose a lesser sentence, he still would have imposed a sentence of natural life imprisonment.

11

We note the legislature has determined that a crime involving the murder of more than one victim requires imposition of either the death penalty or a sentence of natural life, regardless of defendant's mitigation evidence. *People ex rel. Daley v. Strayhorn*, 119 Ill. 2d 331 (1988). The mandatory sentence of natural life imprisonment has been held constitutional although it can be regarded as precluding the consideration of mitigating or rehabilitating factors as provided in *Strayhorn*:

> "[I]t is constitutionally permissible for the legislature to fix this mandatory minimum penalty where it has determined that no set of mitigating circumstances could allow a proper penalty of less than natural life for the crimes of two or more murders." *Strayhorn*, 119 Ill. 2d at 336. See also *People v. Wages*, 261 Ill. App. 3d 576, 588 (1994).

Based on our review of the record, for the reasons previously discussed, we reject defendant's argument that the trial court failed to properly consider defendant's mitigation evidence.

### III. COURT'S FACTUAL FINDINGS NOT ERRONEOUS

Defendant contends the court made "erroneous factual findings concerning the evidence in aggravation, and as a result sentenced Mr. Thompkins' based upon improper aggravating factors in violation of the 14th amendment to the United States Constitution." In support of that contention, defendant argues that the trial court erred in characterizing the shootings of Michael Weaver, Gerald Holton and Arthur Sheppard as similar because they were gang related, or related

1-05-0563

to organized crime.

In 1970, defendant was the head of the Kingston Green Black P Stone Rangers. He was the head of the gang from age 16 to age 23 or 24. Defendant and his fellow gang members suspected Michael Weaver of informing the Markham police of gang activities. Defendant brought Weaver to a field in Markham, kissed him on both cheeks, and shot him three or four times. Weaver did not die, but was paralyzed. Regarding the murder of Arthur Sheppard and Gerald Holton, while defendant was not the shooter, defendant played a prominent role in planning the shooting murder of the two men. Accordingly, the judge's characterization of the crimes as similar was not erroneous.

Moreover, if the court erred in its subjective characterization, such error was an insignificant element of defendant's sentence and was harmless in the context of defendant's fundamental right to liberty. *People v. Bourke*, 96 Ill. 2d 327, 333 (1983).

IV. NATURAL LIFE SENTENCE IS NOT UNCONSTITUTIONALLY DISPARATE

Defendant contends his sentence is unconstitutionally disparate with Ronnie Moore's sentence because he was less culpable in the murders of Holton and Sheppard and more amenable to rehabilitation. Both defendant and Moore were sentenced to natural life imprisonment.

Based on the evidence, we disagree with defendant's characterization of his conduct. The record does not reflect that Moore was the more culpable offender. Rather, defendant played a prominent role in planning the double murders and actively participated in the crimes and their concealment. *People v. Thompkins*, 161 Ill. 2d 148, 185-86 (1994) (*Thompkins* II).

13

1-05-0563

The record further reflects that while defendant provided various factors in mitigation, he also had a more serious criminal history than Moore. The defendant had been convicted in 1971 of aggravated battery and was sentenced to 15 to 20 years' imprisonment, while Moore's only previous conviction was in 1972 for robbery, for which he was sentenced to five years to five years and a day. *Thompkins*, 161 Ill. 2d at 186-87 (*Thompkins* II). Based on the record, we reject defendant's argument that his sentence to natural life imprisonment is unconstitutionally disparate to Moore's sentence to natural life imprisonment.

For the reasons previously discussed, we affirm the judgment of the circuit court.

Affirmed.

O'BRIEN and GALLAGHER, JJ., concur.

14

1-05-0563