# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Oaks, 2012 IL App (3d) 110381**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS E. OAKS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0381 |
| Filed | November 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the dismissal of defendant's postconviction petition after a third-stage evidentiary hearing and the denial of leave to file a supplemental postconviction petition during the third-stage hearing, the appellate court rejected defendant's contentions that he received ineffective assistance based on counsel's failure to present evidence of his abusive childhood and that a supplemental petition should have been allowed, since that evidence did not negate the severity of the victim's injuries, even though it was relevant to the decision to impose a death sentence, and the commutation of the death sentence rendered moot the sentencing issues and the ineffective assistance claims. |
| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 92-CF-235; the Hon. Charles H. Stengel, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Anne E. Carlson, Justyna Garbaczewska Scalpone and Tiffany Boye Green (argued), all of State Appellate Defender's Office, of Chicago, for appellant.

Terence M. Patton, State's Attorney, of Cambridge (Terry A. Mertel and Dawn D. Duffy (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Lytton and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1        In this appeal, defendant, Douglas E. Oaks, contests the dismissal of his postconviction petition after a third-stage evidentiary hearing. Defendant also challenges the trial court's denial of his request for leave to file supplemental postconviction claims during the third-stage evidentiary hearing. For the reasons stated below, we affirm.

¶ 2                                FACTS

¶ 3        In 1992, defendant was charged with two counts of first degree murder for the death of his girlfriend's three-year-old son (the victim).[1] The State filed a notice to seek the death penalty. Defendant's family retained a private attorney to represent him. Defendant filed a pretrial motion asking the court to appoint multiple experts to assist him in preparing his defense. The court denied defendant's motion, reasoning that, because defendant was represented by private counsel, he was not indigent and therefore did not qualify for financial assistance to hire experts. As a result, private counsel withdrew from the case and the court appointed the public defender after finding defendant indigent. The matter proceeded to a jury trial.

¶ 4        Defendant testified that he became frustrated with the victim when the victim wet his pants. As a result, defendant threw the victim toward a mattress. Instead of landing on the mattress, the victim landed on the floor. Defendant denied intentionally harming the boy.

¶ 5        The State alleged that defendant violently shook the victim and slammed him against an object, causing his brain to bleed and swell, which led to his death. The State called multiple doctors who opined that the victim's injuries were so extensive that they had to be caused

---

[1]The facts underlying this case are fully discussed in *People v. Oaks*, 169 Ill. 2d 409 (1996), and will be repeated here only as necessary to resolve the issues currently on appeal.

by violent shaking and by impact applied with a great amount of force, rather than by the actions described by defendant.

¶ 6     The jury found defendant guilty of two counts of first degree murder. After defendant waived his right to a jury for sentencing purposes, the trial court found defendant eligible for the death penalty based upon the evidence presented at the guilt phase. At the second stage of the sentencing hearing, the State presented evidence in aggravation that defendant had been arrested for drug possession in 1985, when he was 18. Defendant admitted that he had obtained the drugs, as well as several handguns, a knife, money and jewelry, when he had burglarized the home of a roommate's parents. Defendant was convicted of burglary and the drug charges were dismissed. In 1989, defendant resisted arrest after assaulting his girlfriend and breaking her arm. He was sentenced to one year in jail and ordered to undergo alcohol counseling. In 1990, defendant was arrested for public intoxication, disorderly conduct, and interfering with official acts.

¶ 7     Defendant presented, as evidence in mitigation, *inter alia*, the testimony of Dr. Robert Chapman, a psychiatrist. Dr. Chapman stated that he reviewed "testimony, hospital reports, autopsy reports" and defendant's videotaped statements prior to examining him in person. Based upon this examination, Dr. Chapman testified that in his opinion defendant acted under the influence of an extreme emotional disturbance when he killed the victim.

¶ 8     During the State's cross-examination, Dr. Chapman revealed that he believed that defendant was abused as a child. Chapman went on to explain that he believed the abuse suffered by defendant as a child caused him to "snap" and abuse the victim. Dr. Chapman testified that an adult who had been abused as a child could react violently to incidents that would seem insignificant to others, like the victim's wetting his pants. The trial court, in sentencing defendant, rejected Dr. Chapman's finding that there had been an extreme mental or emotional disturbance which would preclude imposition of the death penalty.

¶ 9     While his direct appeal to the supreme court was still pending, defendant filed a *pro se* postconviction petition in which he claimed, *inter alia*, that the trial court's holding that defendant could only obtain financial assistance to retain expert witnesses if he were represented by a public defender resulted in him having to choose between two constitutional rights: the right to counsel of choice and the right to present expert witnesses necessary to the defense. The petition was amended to include a claim that defendant was deprived of effective assistance of trial counsel where counsel failed to present evidence, at sentencing, of abuse defendant suffered during his childhood.

¶ 10    Ultimately, the supreme court affirmed defendant's conviction and sentence. *Oaks*, 169 Ill. 2d at 471. Specifically, the court held:

"[T]he record establishes that the victim's injuries were severe, that defendant inflicted them with extreme and violent force, that he did so in separate acts, and that the victim suffered prolonged pain. Thus, the trial court did not err in concluding that defendant was eligible for death under section 9-1(b)(7) [of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, ¶ 9-1(b)(7)),] where the murder was exceptionally brutal or heinous and indicative of wanton cruelty." *Oaks*, 169 Ill. 2d at 465-66.

The court also found that the trial court's rejection of Dr. Chapman's testimony was a proper

exercise of discretion. *Oaks*, 169 Ill. 2d at 468.

¶ 11　　While the postconviction proceedings were pending, defendant's death sentence was commuted by the Governor of Illinois to life imprisonment. In 2004, the trial court dismissed defendant's amended petition, holding that all the sentencing claims were rendered moot by the commutation of defendant's death sentence. The court also held that the guilt phase claims were either procedurally barred or without merit. Defendant appealed and we reversed, holding that three of the sentencing claims were relevant to eligibility and thus were not moot under *People v. Mata*, 217 Ill. 2d 535 (2005). *People v. Oaks*, No. 3-04-0645 (Apr. 12, 2006) (unpublished order under Supreme Court Rule 23).

¶ 12　　On remand, the trial court granted an evidentiary hearing on the claim of ineffective assistance of trial counsel for failure to present evidence of child abuse, but dismissed the other two claims. The evidentiary hearing was bifurcated into performance and prejudice proceedings.

¶ 13　　Defendant filed a request for leave to file a supplemental petition alleging: (1) actual innocence of the exceptionally brutal and heinous aggravating factor underlying defendant's eligibility for life imprisonment, based on new medical evidence, and (2) ineffective assistance of appellate counsel for failure to raise a potentially meritorious counsel-of-choice issue on direct appeal. Defendant's request for leave was subsequently denied.

¶ 14　　Ultimately, the trial court also denied defendant's postconviction petition. While the court found that counsel's performance was deficient where he failed to conduct a sufficient investigation, it concluded that the deficiency did not prejudice defendant.

¶ 15　　　　　　　　　　　　　　　ANALYSIS

¶ 16　　Defendant argues the trial court erred in: (1) dismissing his postconviction petition on the grounds that he was not deprived of effective assistance of counsel where trial counsel failed to investigate and present evidence of defendant's abusive childhood at the sentencing proceedings, and (2) denying defendant's request for leave to file supplemental claims of actual innocence and ineffective assistance of appellate counsel for failure to raise a potentially meritorious counsel-of-choice issue on direct appeal.

¶ 17　　However, as a threshold matter, the State argues that reassessment of defendant's sentencing issues is moot. Specifically, the State argues that the "holding in *People v. Mata*, 217 Ill. 2d 535 (2005) does not require a reassessment of defendant's sentencing issues." Defendant, however, calls our attention to the fact that we have already held that *Mata* requires that defendant's sentencing issues be heard. See *People v. Oaks*, No. 3-04-0645 (Apr. 12, 2006) (unpublished order under Supreme Court Rule 23). Specifically, we stated:

　　　　"*Mata* is now binding authority and requires reassessment of sentencing issues arguably attacking the evidence supporting a finding of defendant's eligibility for the death penalty. Issues to be reassessed on remand include claims I, X, and XI, which concern the admissibility of evidence at the sentencing hearing and ineffective assistance of trial and appellate counsel." *People v. Oaks*, No. 3-04-0645, slip op. at 7 (Apr. 12, 2006) (unpublished order under Supreme Court Rule 23).

Thus, defendant concludes that the "law of the case" doctrine mandates a finding that his sentencing issues are not moot.

¶ 18    The "law of the case" doctrine bars relitigation of an issue already decided in the same case. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002). "Rulings on points of law made by a court of review are binding in that case upon remand to the trial court and on subsequent appeals to that same reviewing court *unless a higher court has changed the law*." (Emphasis added.) *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005).

¶ 19    While defendant correctly asserts that *Mata* is still good law, we note that subsequent to our 2006 decision in the instant case (*People v. Oaks*, No. 3-04-0645 (Apr. 12, 2006) (unpublished order under Supreme Court Rule 23)), the supreme court in *People v. Adkins*, 239 Ill. 2d 1 (2010), clarified the limited scope of the *Mata* holding. We review both the *Mata* and *Adkins* decisions.

¶ 20    In *Mata*,[2] a defendant whose death sentence had been commuted to a sentence of natural life in prison challenged the statutory aggravating factor that had been used to find her eligible for the death penalty. Had she not been found death-eligible, she would have been sentenced to a term of years with the possibility of eventual parole. Her argument on appeal was that the State had not proven the statutory aggravating factor of commission of murder in "a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme or design to take a human life by unlawful means" (720 ILCS 5/9-1(b)(11) (West 1998)) beyond a reasonable doubt. *Mata*, 217 Ill. 2d at 539. In response, the State alleged that defendant's appeal should be dismissed as moot due to the commutation of her death sentence to natural life imprisonment. *Mata*, 217 Ill. 2d at 541.

¶ 21    The *Mata* court determined that the issue was governed by the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Ring*, the Court noted that the aggravating factors that allow imposition of the death penalty operate as " 'the functional equivalent of an element of a greater offense.' " *Ring*, 536 U.S. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19).

¶ 22    Ultimately, the *Mata* court held that the defendant was entitled to claim that the evidence of the aggravating factor was insufficient, despite the commutation of her death sentence. *Mata*, 217 Ill. 2d at 550. The court reasoned that even though her death sentence was commuted, she was still subject to the effects of the finding of eligibility in light of the fact that had she not been found death-eligible, she would have been sentenced to a term of years with the possibility of parole. *Mata*, 217 Ill. 2d at 542-43. The court rejected the State's mootness argument and the matter was remanded to the appellate court for consideration of the merits of her appeal. *Mata*, 217 Ill. 2d at 550-51.

¶ 23    In *Adkins*, the defendant was charged with felony murder. While the defendant's trial

---

[2]The facts underlying *Mata* were discussed and summarized in *Adkins*. Where relevant, we use the *Adkins* court's summarization.

counsel challenged the State's factual basis regarding the murder element, counsel conceded at trial and the guilt phase that he committed the felony of residential burglary. Defendant was ultimately convicted and sentenced to death. Citing *People v. Johnson*, 128 Ill. 2d 253 (1989), and *People v. Hattery*, 109 Ill. 2d 449 (1985), defendant argued on appeal that his counsel's strategy was flawed because "[i]f it failed and the jury convicted [defendant] of the murder, he had no defense to his eligibility for the death penalty because of counsel's concession that [he] had committed residential burglary."

¶ 24    The defendant did not analyze his claim under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Instead, he argued that counsel's strategic choice at the guilt phase, although it might have been a reasonable trial strategy, deprived him of his right to demand that the State prove his eligibility for the death penalty beyond a reasonable doubt. *Adkins*, 239 Ill. 2d at 43. Thus, the defendant argued that the question presented was whether under *Johnson* and *Hattery* he was deprived of his right to an adversarial hearing at the eligibility phase because counsel conceded his guilt of residential burglary at the guilt phase. *Adkins*, 239 Ill. 2d at 43. The defendant cited *Mata* in support of his position.

¶ 25    Upon review, the *Adkins* court found the defendant's death sentence did not violate *Mata*. *Adkins*, 239 Ill. 2d at 46. Specifically, the court stated:

"Defendant offers *Mata* as support for his argument that because a statutory aggravating factor is the 'functional equivalent' of an element of the offense of capital murder, defense counsel's conceding existence of any one of the charged aggravating factors amounted to a guilty plea 'to a new offense' without his consent to such a plea. At oral argument, counsel used the expression that trial counsel had 'pleaded guilty to eligibility.'

*Mata* does not support this argument. The constitutional right at stake in *Apprendi*, *Ring*, and *Mata* was the sixth amendment right to trial by jury–to have each element of each offense proved to an impartial jury beyond a reasonable doubt. The constitutional right at stake in [*United States v.*] *Cronic*, [466 U.S. 648 (1984),] *Hattery*, and *Johnson* was the sixth amendment right to the effective assistance of counsel. Defendant does not make an *Apprendi*-based argument.

Even under the *Apprendi* line of cases, no error occurred. At the beginning of the sentencing phase, the State moved to readmit all evidence presented at trial. The motion was granted. Defendant's eligibility for the death penalty was shown to the trial court–an impartial finder of fact–by overwhelming evidence that he was interrupted by the victim while in the act of burglarizing her apartment and that he killed her to avoid being identified. Thus, the finding of eligibility for the death sentence did not violate *Apprendi*, *Ring*, or *Mata*." *Adkins*, 239 Ill. 2d at 46.

¶ 26    Like *Adkins*, the instant case does not present us with an *Apprendi*-based argument. Instead, the constitutional right at stake in the instant case is the sixth amendment right to the effective assistance of counsel. Even under the *Apprendi* line of cases no error occurred. The supreme court, in the instant case, has already expressly affirmed the trial court's finding that defendant was eligible for death under section 9-1(b)(7) where the murder was exceptionally brutal or heinous and indicative of wanton cruelty. See *Oaks*, 169 Ill. 2d at 465-66.

Specifically, the court found that the record established that the defendant's victim's injuries were "severe, that defendant inflicted them with extreme and violent force, that he did so in separate acts, and that the victim suffered prolonged pain." *Oaks*, 169 Ill. 2d at 465-66. Thus, the finding of eligibility for the death sentence did not violate *Apprendi* or *Mata*. *Adkins*, 239 Ill. 2d at 46.

¶ 27    In coming to this conclusion, we emphasize that evidence of the defendant's abusive childhood does not negate the severity of the victim's injuries, the amount of extreme and violent force defendant inflicted upon the victim, or the pain the victim endured. While evidence of a defendant's abusive childhood or other mitigating evidence may factor into a trier of fact's discretionary decision of whether to actually impose a sentence of death or, alternatively, life in prison, it does not change a defendant's eligibility status. Consequently, any claims of ineffective assistance involving evidence of defendant's abusive childhood or defendant's sentencing issues were rendered moot upon commutation of his death sentence.

¶ 28    While our above analysis results in us not reaching the merits of defendant's postconviction petition, we are still left with the question of whether the trial court erred in denying defendant's request for leave to file supplemental postconviction claims of actual innocence and ineffective assistance of appellate counsel for failure to raise a potentially meritorious counsel-of-choice issue on direct appeal. A trial court's decision on whether or not to grant leave to counsel to file an addendum to an amended postconviction petition is reviewed for an abuse of discretion. *People v. King*, 192 Ill. 2d 189, 193 (2000).

¶ 29    A trial court must obey the clear and unambiguous directions in a mandate issued by a reviewing court. *People v. Daley*, 92 Ill. 2d 271, 276 (1982). We previously remanded with the following mandate:

> "We reverse the dismissal of sentencing issues as framed in claims I, X and XI and remand for further proceedings." *People v. Oaks*, No. 3-04-0645, slip op. at 7 (Apr. 12, 2006) (unpublished order under Supreme Court Rule 23).

¶ 30    In light of our specific remand, we cannot say that the trial court abused its discretion in denying defendant's request for leave. Moreover, we note that the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2010)) is entirely a creature of statute, and the legislature has mandated specific requirements that a petitioner must meet to assert a claim under the Act. Allowing a defendant to bring a new postconviction claim at the third stage of the proceedings, thereby bypassing the first and/or second stages, challenges the integrity of the Act. If defendant wishes to bring his two supplemental claims, he may file a successive postconviction petition as discussed in section 122-1(f) of the Act. 725 ILCS 5/122-1(f) (West 2010). Such petition will be subject to the cause-and-prejudice test under the Act. See 725 ILCS 5/122-1(f) (West 2010).

¶ 31    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 32    Affirmed.