2024 IL App (1st) 221193-U

FIRST DISTRICT,
FIRST DIVISION
January 16, 2024

No. 1-22-1193

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 91 CR 26722 02 |
| | ) | |
| JAMES MUNSON, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Lavin concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held:* (1) Where petitioner's death sentence was executively commuted to life imprisonment without parole, petitioner's *Miller* claim was not moot. (2) Petitioner failed to establish cause and prejudice for the filing of a successive postconviction petition raising proportionate penalties challenge to his sentence for crimes he committed at the age of 20. (3) Parole review statute did not violate equal protection principles.

¶ 2    Following a 1993 jury trial, petitioner James Munson was found guilty of first-degree murder, aggravated kidnapping, armed robbery, and arson in connection with the shooting death

of Marvin Cheeks. Petitioner was sentenced to death on the murder conviction and to concurrent prison terms on the other convictions. In 1995, petitioner filed his initial petition for relief under the Post-Conviction Hearing Act (Act), the second-stage denial of which was affirmed on appeal. *People v. Munson*, 206 Ill. 2d 104 (2002). In 2003, petitioner's death sentence was executively commuted to life imprisonment without the possibility of parole.

¶ 3    In 2021, petitioner sought leave to file a successive postconviction petition alleging that his life sentence for offenses that he committed at the age of 20 violated the proportionate penalties clause of the Illinois Constitution. The circuit court denied his request. For the reasons that follow, we affirm.

¶ 4                                                      BACKGROUND

¶ 5                                                      Trial Evidence

¶ 6    The evidence at petitioner's trial[1] showed that on October 5, 1991, at approximately 4 a.m., fire department paramedics came upon "a car totally engulfed in flame." Under a nearby viaduct, they found the body of a man lying face down with bullet holes in his head and lower back. Near the car, police found a cigarette lighter and a burned plastic bottle with a partially burned wick inserted into its neck. A fire investigator determined the cause of the fire was arson. The body was identified as that of Marvin Cheeks. A medical examiner determined that Cheeks' death was caused by multiple gunshot wounds, and the trajectory of one bullet suggested that Cheeks might have been shot as he lay on the ground.

¶ 7    The next day, petitioner, covered with grease and with burn marks on his face, told a friend that the night before, he shot someone who "broke and ran," so he "shot him again" and then "torched" his car "because the guy tried [him]."

_____

[1] A more detailed recitation of the trial evidence may be found in *People v. Munson*, 171 Ill. 2d 158, 167-74 (1996).

¶ 8        On October 8, police arrested petitioner and recovered a .357 Magnum Colt revolver on which petitioner's fingerprints were found. Petitioner admitted that he used that revolver to shoot Cheeks. He said that he and his codefendant were "staking out" pay phones looking for somebody to rob. They approached a vehicle where the driver had fallen asleep. Petitioner "put his gun on" the driver and took his coat, gold chain, watch, and cash. Petitioner and his codefendant then got in the vehicle, with petitioner keeping the gun on the victim, and directed him to drive. As they drove, the victim stated that his name was Marvin Cheeks.

¶ 9        Petitioner told police that his codefendant directed Cheeks to stop in a vacant lot near a viaduct. Cheeks attempted to grab petitioner's gun, which discharged twice; Cheeks then jumped from the vehicle and ran. Petitioner claimed that he did not give chase but decided to destroy the vehicle in case he had left fingerprints inside. He poured gasoline on the car and lit it with a cigarette lighter, which caused an explosion that burned his face. When officers asked if the shooting was an accident, petitioner replied: "[I]f you think this is an accident, how do I explain shooting him the second time and torching his car[?]"

¶ 10                                Trial and Posttrial Proceedings

¶ 11        Following a jury trial, petitioner was found guilty of first-degree murder, aggravated kidnapping, armed robbery, and arson. Petitioner waived his right to a jury for sentencing, and the trial court held a bifurcated proceeding to decide whether to impose the death penalty. At the first stage, the court found him to be eligible for the death penalty. At the second stage, the State presented evidence that petitioner had a previous conviction for armed robbery and was on parole at the time of this offense, having been released from prison three months prior. Petitioner presented 11 mitigation witnesses, including his mother, father, and 4 aunts who testified as to petitioner's childhood living situation.

¶ 12        In imposing sentence, the court found in aggravation that petitioner "was cold and calculating in every sense of the word." After taking the decedent's property, petitioner and his codefendant made him drive "relatively far" to an isolated area where they could kill him without being observed, shot him four times, and then committed arson "to cover up further." Considering the evidence in mitigation, the court found that petitioner's immediate family was "in substantial disarray," but his extended family was "particularly close, nurturing, caring, and supportive." Although petitioner was raised in crowded conditions, he always had food and shelter and had multiple father figures in his life. Regarding petitioner's rehabilitative potential, the court found it significant that he committed a prior armed robbery in which he personally wielded a gun and, "shortly []after" being released from the penitentiary, "wielded the[] gun on another victim" and shot him four times. The court found no mitigation significant enough to preclude imposition of the death penalty and sentenced petitioner to death.

¶ 13        Petitioner's conviction and sentence were affirmed on direct appeal. *People v. Munson*, 171 Ill. 2d 158 (1996). Petitioner filed a postconviction petition in which he raised numerous claims, including lack of probable cause for his arrest, a *Batson* claim, an alleged *Brady* violation, allegations that the State used perjured testimony at trial and made improper comments in closing argument, a claim of ineffective assistance of trial counsel for failing to investigate and present mitigating evidence at his sentencing hearing, and a claim that his sentence was unconstitutionally disparate from that of his codefendant. Our supreme court affirmed the second-stage dismissal of the petition. *Munson*, 206 Ill. 2d at 149.

¶ 14        On January 10, 2003, Governor George Ryan commuted petitioner's death sentence to a sentence of life without parole. Petitioner filed a motion to reduce his life sentence, which the trial court denied. Petitioner appealed, but the appeal was dismissed after appellate counsel

sought leave to withdraw and requested that "[i]n the interest of judicial economy, this Court should dismiss Defendant's appeal as moot because the commutation rendered any sentencing issue moot."

¶ 15                                    The Instant Successive Petition

¶ 16         In 2021, petitioner sought leave to file a successive post-conviction petition arguing that his life sentence for crimes he committed at the age of 20 violates the proportionate penalties clause of the Illinois Constitution based on *Miller v. Alabama*, 567 U.S. 460 (2012). Attached to his petition was a 37-page report from developmental psychologist James Garbarino stating that petitioner's crimes "reflected immature impulsiveness due to his brain development" and were "the result, in part, of the dysfunctional family in which he grew up." He further stated that petitioner's "potential for rehabilitation was masked by his youth at the time of his crimes."

¶ 17         On July 28, 2022, the circuit court denied leave to file a successive petition, finding that petitioner's claim was meritless and that petitioner failed to make the requisite showing of cause and prejudice.

¶ 18                                              ANALYSIS

¶ 19                                              Mootness

¶ 20         As a threshold issue, the State argues that the Governor's act of commuting petitioner's sentence renders his claim moot. The Illinois Constitution authorizes the governor to "grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const. 1970, art. V., § 12. This power is "extremely broad" (*People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 473 (2004)) and is not bound by statutory limits but includes "the authority to commute a defendant's sentence to a term of years under the statutory minimum" (*People v. Thompkins*, 376 Ill. App. 3d 629, 635 (2007)).

¶ 21 Under the separation of powers doctrine, "[n]o branch (legislative, executive or judicial) shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. "The clemency power granted by the Illinois Constitution is not subject to control by the courts or the legislature, but can be controlled only by the Governor's conscience and sense of public duty." *People v. Mata*, 217 Ill. 2d 535, 541 (2005), as modified on denial of reh'g (Jan. 23, 2006). Because commutation "removes the judicially imposed sentence and replaces it with a lesser, executively imposed sentence," it is well established that " 'sentencing issues' or 'sentencing-phase issues' are rendered moot by the Governor's commutation." *Id.* at 547. However, "[i]n each case where nonsentencing issues were raised, *** we went on to decide those issues." *Id.* at 548. Moreover, the *Mata* court emphasized that an individual's due process rights are not subordinate to the Governor's clemency power:

> "State courts have an obligation to enforce and protect every right granted by the Constitution of the United States whenever those rights are involved in a suit or proceeding before them. [Citation] Therefore, in the event of a conflict between the Governor's clemency power granted by the Illinois Constitution and a defendant's right guaranteed by the due process clause of the fourteenth amendment, the constitutional right to due process of law must prevail." *Id.* at 546-47.

¶ 22 Accordingly, the *Mata* court reached the merits of defendant's claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that the evidence was insufficient to prove the aggravating factor that made her eligible for the death penalty or natural life imprisonment. *Mata*, 217 Ill. 2d at 548. "This challenge implicates defendant's due process rights guaranteed by the fourteenth amendment to the United States Constitution. The Governor's action cannot bar defendant's right to seek an effective, complete remedy on this claim." *Id.* at 548.

¶ 23    Following the *Mata* decision, in *People v. Ramsey*, 2019 IL App (3d) 160759, ¶¶ 19-21, we held that commutation of defendant's death sentence did not render moot his claim under *Miller*. We explained that " 'executive clemency is not immune from judicial review if it violates the Constitution.' " (Emphasis omitted.) *Id.* ¶ 20 (quoting *Hand v. Scott*, 285 F. Supp. 3d 1289, 1303-04 (N.D. Fla. 2018)). Because defendant's *Miller* claim implicated his due process rights under the eighth and fourteenth amendments, we reached the merits of his claim. *Id.* ¶ 21.

¶ 24    In support of its argument that petitioner's claim is moot, the State relies on *People v. Harris*, 357 Ill. App. 3d 330, 333 (2005), a pre-*Mata* case that draws significant support from *People v. Watson*, 347 Ill. App. 3d 181 (2004), which our supreme court overruled in *Mata*, 217 Ill. 2d at 549. Accordingly, we do not follow *Harris*. The *State* also cites *People v. Oaks*, 2012 IL App (3d) 110381, in which defendant argued that his trial counsel failed to present mitigating evidence of his abusive childhood during sentencing. The *Oaks* court held that this sentencing issue was rendered moot upon commutation of his death sentence. *Id.* ¶ 26. Contrary to the State's argument in its brief, *Oaks* does not stand for the proposition that *Mata* is limited to *Apprendi*-based claims; *Mata* makes clear that "in the event of a conflict between the Governor's clemency power granted by the Illinois Constitution and a defendant's right guaranteed by the due process clause of the fourteenth amendment, the constitutional right to due process of law must prevail." *Mata*, 217 Ill. 2d at 546-47. Accordingly, we find petitioner's *Miller* claim in the instant case is not moot and address its merits.

¶ 25                                Cause and Prejudice

¶ 26    The Post-Conviction Hearing Act allows a convicted defendant to assert a substantial denial of his constitutional rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Because the Act contemplates the filing of a

single petition (*People v. Holman*, 2017 IL 120655, ¶ 25 (citing 725 ILCS 5/122-3 (West 2010))), leave to file a successive petition will only be granted if the defendant raises a colorable claim of actual innocence or alleges sufficient facts to satisfy the cause-and-prejudice test. *Id.* ¶ 26; *People v. Smith*, 2014 IL 115946, ¶ 34. To establish "cause," defendant must show an objective factor external to the defense that prevented him from raising his claim in his initial postconviction proceeding. *Holman*, 2017 IL 120655, ¶ 26. To establish "prejudice," defendant must show that the claimed constitutional error "so infected his trial that the resulting conviction violated due process." *Id.* We review the circuit court's denial of leave to file a successive postconviction petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 27        Here, petitioner challenges his sentence of life imprisonment for crimes he committed at the age of 20. In *Miller*, 567 U.S. at 479, the United States Supreme Court held that a juvenile offender may not be sentenced to mandatory life in prison without possibility of parole. Petitioner plainly does not fall within the ambit of *Miller*, since *Miller*'s eighth amendment protections apply only to juveniles, not to young adults. *People v. Harris*, 2018 IL 121932, ¶ 61. Instead, petitioner argues that his sentence violates the proportionate penalties clause of the Illinois Constitution, which provides that "all penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship" (Ill. Const. 1970, art. I, § 11). See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 69 (the proportionate penalties clause is not determined in lockstep with the eighth amendment but may provide additional limitations on penalties). Under this provision, a sentencing statute is unconstitutional as applied when it "is shocking to the moral sense of the community" based upon an " 'evolving standard[] of decency that mark[s] the progress of a maturing society.' "

*People v. Miller*, 202 Ill. 2d 328, 339-40 (2002) (*Leon Miller*) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

¶ 28    Petitioner has failed to allege facts establishing cause and prejudice for the filing of a successive postconviction petition. Although a postconviction petition is a proper vehicle for a young adult to bring a constitutional challenge to his sentence (see *People v. Harris*, 2018 IL 12932, ¶ 48; *People v. Thompson*, 2015 IL 118151, ¶ 44), our supreme court has unequivocally held that defendants cannot rely on *Miller* and its progeny to show cause for raising proportionate penalties challenges in successive petitions. *People v. Dorsey*, 2021 IL 123010, ¶ 74; *People v. Moore*, 2023 IL 126461, ¶ 40.

¶ 29    In *Dorsey*, 2021 IL 123010, defendant, a juvenile offender, sought leave to file a successive postconviction petition to challenge his sentence under *Miller* and the proportionate penalties clause. The court found cause for defendant's *Miller* claim, since "*Miller* set forth a new substantive rule, which constitutes 'cause' because [a claim based on *Miller*] was not available earlier." (Internal quotation marks omitted.) *Id.* ¶ 35. However, the court further stated:

> "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause. [Citation.] *** *Miller*'s unavailability prior to 2012 at best deprived defendant of some helpful support for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* ¶ 74.

¶ 30    Our supreme court recently reaffirmed *Dorsey* in *Moore*, 2023 IL 126461, ¶ 40, stating that "[a]s *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." Like the defendants in *Dorsey* and *Moore*, petitioner "had the essential legal tools to raise his present

proposed claim under the proportionate-penalties clause when he filed his previous postconviction petition[].” (Internal quotation marks omitted.) *Id.* ¶ 42.

¶ 31    Petitioner argues that *Dorsey* and *Moore* are distinguishable because, unlike the defendants in those cases, he received a death sentence that was commuted to life imprisonment, which he characterizes as a “mandatory” rather than a “discretionary” sentence. However, the record reflects that petitioner's sentence was not mandatory. The trial court that originally sentenced petitioner had discretion to impose a sentence as low as 20 years, substantially less than a *de facto* life sentence (see *People v. Buffer*, 2019 IL 122327, ¶ 41). The Governor, in commuting petitioner's sentence, had discretion to impose a lesser term of years, but chose not to do so. See *Thompkins*, 376 Ill. App. 3d at 635 (“There is no question that a governor of the State of Illinois has the authority to commute a defendant's sentence to a term of years under the statutory minimum”); *Mata*, 217 Ill. 2d at 541-42 (“the only recognized restriction on the clemency power is that the Governor may not change a defendant's conviction of one crime into a conviction of another”). Because both the sentencing judge and the Governor had discretion to impose a lesser sentence, *Dorsey* and *Moore* are dispositive of the issue of cause.

¶ 32    Additionally, because of the discretionary nature of his sentence, petitioner cannot establish prejudice. In *Jones v. Mississippi*, 141 S. Ct. 1307, 1313 (2021), the United States Supreme Court held that “[i]n a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient.” That is, unless the sentencing court “expressly refuses as a matter of law to consider the defendant's youth” (*id.* at 1320 n.7), a discretionary sentencing scheme *ipso facto* satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances. Following *Jones*, in *People v. Wilson*, 2013 IL 127666, ¶ 44, our

supreme court held that a juvenile offender could not establish prejudice for the filing of a successive postconviction petition where the sentencing scheme "granted the sentencing court the discretion to consider [defendant's] youth and attendant circumstances and to impose less than a *de facto* life sentence" and the record did not reflect that the sentencing court refused "as a matter of law" to consider his youth.

¶ 33 Similarly, in the present case, the sentencing court had full discretion to consider petitioner's youth and attendant circumstances. The record reflects that the court heard extensive testimony as to petitioner's upbringing and weighed it in detail when imposing sentence. Under *Jones* and *Wilson*, petitioner cannot establish prejudice for his proportionate penalties claim.

¶ 34 Constitutionality of the Parole Review Statute

¶ 35 For the first time on appeal, petitioner also raises a challenge to the constitutionality of the parole review statute, claiming that the exclusion of defendants sentenced before its effective date violates equal protection. See *People v. Wells*, 2023 IL App (3d) 210292, ¶ 17 (the constitutionality of a statute may be raised at any time, even on appeal).

¶ 36 Both the Illinois and United States constitutions guarantee individuals equal protection of the laws (Ill. Const. 1970 art. I. § 2; U.S. const., amend. XIV, § 1), which entails that "similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat them differently." *People v. Richardson*, 2015 IL 118255, ¶ 9. When the challenged legislation does not affect a fundamental right or discriminate against a suspect class, rational basis scrutiny applies (*id.*), which requires that the distinction bear "a rational relationship to a legitimate state interest" (*People v. Profit*, 2023 IL App (1st) 210881, ¶ 33).

¶ 37        Section 5-4.5-115 of the Unified Code of Corrections provides, with exceptions not relevant here:

> "A person under 21 years of age at the time of the commission of first degree murder *who is sentenced on or after June 1, 2019* (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence." (Emphasis added.) 730 ILCS 5/5-4.5-115(b) (West 2022).

Defendant argues there is no rational basis for drawing a distinction between those sentenced before the statute's effective date of June 1, 2019 and those sentenced after.

¶ 38        Our supreme court addressed this issue in regards to a different statute in *Richardson*, 2015 IL 118255. At issue was an amendment to the Juvenile Court Act of 1987 that extended the act's application to minors under the age of 18, where previously it only applied to those under 17. The amendment applied only to violations committed after its effective date of January 1, 2014. *Id.* ¶ 3 (citing 720 ILCS 5/11-1.20(a)(2) (West 2012)). The defendant, who was indicted in 2013 at the age of 17, challenged the constitutionality of the amendment's prospective-only application on equal protection grounds. *Id.* ¶ 5.

¶ 39        In rejecting defendant's claim, our supreme court explained that "neither the fourteenth amendment nor the Illinois Constitution prevents statutes and statutory changes from having a beginning, nor does either prohibit reasonable distinctions between rights as of an earlier time and rights as they may be determined at a later time." *Id.* ¶ 10. The court found that "the legislature's chosen effective date bears a rational relationship to the legislature's goal of extending the exclusive jurisdiction provision of the Juvenile Court Act," citing several reasons: avoiding confusion and delay, preserving judicial resources, and ensuring that "cases already in progress would not have to restart" and "defendants could not manipulate or delay their

proceedings to take advantage of the amendment's effective date." The court further stated: "We acknowledge that statutory amendments which apply to some but not to others may appear unfair to a certain extent. This is particularly true with ameliorative amendments such as the amendment here. Nevertheless, statutory changes must have a beginning." *Id.*

¶ 40        In *Profit*, 2023 IL App (1st) 210881, a young adult offender sought leave to file a successive postconviction petition challenging the constitutionality of the parole review statute. We found that "the clear purposes of establishing effective dates for legislative changes set forth in *Richardson* are equally applicable here" in holding that the prospective-only application of the statute bore a rational relationship to a legitimate state interest: it served to preserve the finality of convictions and limited judicial resources. *Id.* ¶ 37. Accordingly, we found that defendant failed to establish the requisite prejudice for the filing of a successive postconviction petition. *Id.* ¶ 20 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002) (both elements of the cause-and-prejudice test "must be met in order for the petitioner to prevail")). Finding no reason to depart from our well-reasoned decision in *Profit*, we likewise hold that petitioner "cannot establish prejudice because the prospective-only application of the parole review statute does not violate [his] right to equal protection of the laws." *Id.* ¶ 41.

¶ 41        Petitioner's reliance on *People v. Nicks*, 62 Ill. 2d 350 (1976), and *People ex rel. Carroll v. Frye*, 35 Ill. 2d 604 (1966), is misplaced. In *Nicks*, the court considered the constitutionality of a sentencing provision that applied prospectively only to those serving consecutive sentences, while other sections of the statute applied to all persons in custody on the effective date. *Nicks*, 62 Ill. 2d at 354-55. The court found no rational basis to treat those serving consecutive sentences differently from those serving sentences which were not consecutive. *Id.* at 355. Here, unlike in *Nicks*, the prospective application of the statute at issue is uniform.

¶ 42    In *Frye*, 35 Ill. 2d 604, the court considered the prospective application of a statute granting pretrial detention credit to inmates. The rational basis provided by the State was avoiding double credit. The court rejected this argument and found the prospective-only nature of the statute "invalid when applied to mandatory minimum sentences" because it would cause indigent defendants who were unable to provide bail to serve longer sentences than those who could provide bail. *Id.* at 609-10. In other words, the sentencing scheme created "arbitrary discrimination" among the class of individuals to whom the statute did *not* apply. Petitioner has not identified any such discrimination in this case. Moreover, we note that, to the extent *Nicks* and *Frye* could be read as inconsistent with *Richardson*, we are bound to follow *Richardson* as our supreme court's most recent ruling on the issue. See *Certain Underwriters at Lloyd's, London v. Reproductive Genetics Institute*, 2018 IL App (1st) 170923, ¶ 19 ("only [the supreme court] can modify or overrule its previous decisions, and all lower courts are bound to follow supreme court precedent until such precedent is changed by the supreme court" (internal quotation marks omitted)).

¶ 43                                  CONCLUSION

¶ 44    For the foregoing reasons, we affirm the trial court's denial of leave to file a successive postconviction petition.

¶ 45    Affirmed

¶ 46    JUSTICE PUCINSKI, specially concurring:

¶ 47    I concur because I must since the Illinois Supreme Court decided *Richardson*, but I concur with the hope that Illinois will once again become a beacon of hope for both juvenile and emerging adult offenders. This defendant committed a terrible crime and the victims and their families can never be whole again. But our entire criminal justice system is based on the dual

concepts of punishment and rehabilitation. Maybe Munson has matured and can show himself to be rehabilitated, maybe not. But I continue to believe that the parole board is the best and most efficient way to find out. Denying him any opportunity to ever show he is no longer a threat to society transforms his sentence into one solely of punishment.